**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| CHARTER COMMUNICATIONS, INC., and CHARTER COMMUNICATIONS OPERATING, LLC, <br><br> Plaintiffs/Counterclaim Defendant, <br><br> v. <br><br> UBEE INTERACTIVE, INC., <br><br> Defendant/Counterclaim Plaintiff. | ) ) ) ) ) ) ) ) ) ) ) ) )  Case No.: 4:24-cv-00199-CDP |

**UBEE INTERACTIVE INC.'S ANSWER,**
**AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant/Counterclaim Plaintiff Ubee Interactive Inc. (erroneously sued as Ubee Interactive, Inc.) ("Ubee") respectfully submits its Answer and Affirmative Defenses to Plaintiffs' Complaint, as well as its Counterclaims.

**ANSWER**

**NATURE OF THE ACTION**

1.     This action arises out of Defendant's unjustified refusal to honor its contractual obligation to indemnify, hold harmless, and defend the Charter Plaintiffs for liability and defense costs resulting from patent infringement claims brought against CCI by Entropic Communications, LLC ("Entropic") involving the use of cable modems supplied by Ubee to CCO that the Charter Plaintiffs deployed to offer internet services to their customers.  Entropic sought damages from CCI well in excess of $1 billion.

**ANSWER:** Ubee denies the allegations of the first sentence of Paragraph 1. Ubee is not required to answer legal conclusions and argument. Ubee lacks knowledge or information

1

sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 1, and on that basis denies those allegations.

2.     Pursuant to a Master Purchase Agreement between CCO and Ubee, effective as of October 1, 2016 (the "Ubee MPA"), Ubee sold cable modems (containing Ubee software and hardware components) to CCO that the Charter Plaintiffs used to provide internet services to their customers.

**ANSWER:** Ubee admits that it entered into a Master Purchase Agreement ("MPA") with Charter Communications Operating LLC ("CCO") effective October 1, 2016 for the sale of "Goods," as that term is used in the MPA, from Ubee to CCO. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 2.

3.     Under the Ubee MPA, Ubee agreed to indemnify, hold harmless, and defend the Charter Indemnitees (as defined in the Ubee MPA) from and against any and all claims, damages, losses, liabilities and expenses, including attorneys' fees resulting from third party claims for patent infringement brought against the Charter Indemnitees that involved the Charter Plaintiffs' use or installation of goods supplied by Ubee.

**ANSWER:** To the extent the allegations in this paragraph purport to describe the terms of the MPA, the MPA speaks for itself, and Ubee denies any characterization of the MPA inconsistent with its terms. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 3.

4.     On April 27, 2022, Entropic commenced an action against CCI, Spectrum Advanced Services, LLC and Spectrum Management Holding Company, LLC in the U.S. District Court for the Eastern District of Texas, Case No. 2:22-cv-00125 (the "Entropic -125 Litigation") seeking damages for alleged infringement of six patents related to certain functions performed by

certain accused cable modems and set-top boxes provided to CCO by suppliers, including cable modems supplied to CCO by Ubee.  On May 24, 2022, Entropic filed a first amended complaint in the Entropic -125 Litigation.  On January 10, 2023, Entropic further amended its complaint in the Entropic -125 Litigation to drop Spectrum Advanced Services, LLC and Spectrum Management Holding Company, LLC as defendants, leaving CCI as the sole defendant.

**ANSWER:** Ubee lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4, and on that basis denies those allegations.

5.     On June 1, 2022, the Charter Plaintiffs timely provided notice to Ubee of a third-party claim for patent infringement related to products sold to CCO by Ubee pursuant to CCO's agreements with Ubee, including the Ubee MPA.  The Charter Plaintiffs attached a copy of the Amended Complaint in the Entropic -125 Litigation, and tendered the case to Ubee for defense and indemnification.  Ubee did not assume defense of the case and did not retain counsel to represent CCI.

**ANSWER:** Ubee admits that it received a letter dated June 1, 2022 from Daniel Boglioli with the subject "*Entropic Communications, LLC v. Charter Communications, Inc., et al.,* Case No. 2:22-cv-125 (E.D. Tx)" and that the letter enclosed a document described as the amended complaint in the Entropic -125 Litigation. To the extent the allegations in this paragraph purport to summarize or characterize the June 1, 2022 letter, that letter speaks for itself, and Ubee denies any characterization of the letter inconsistent with its content. Ubee admits that it did not assume defense of or retain counsel to represent CCI in the Entropic -125 Litigation. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 5.

6.     Where Ubee fails to assume the defense of indemnifiable litigation, the Charter Plaintiffs are permitted to undertake the defense of the litigation and Ubee is obligated to reimburse

the Charter Plaintiffs for the costs and expenses of that defense incurred by the Charter Plaintiffs, as well as liabilities and losses relating to the third party claim.

**ANSWER:** To the extent the allegations in this paragraph purport to describe the terms of the MPA, the MPA speaks for itself, and Ubee denies any characterization of the MPA inconsistent with its terms. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 6.

7.      When Ubee and the Charter Plaintiffs' other suppliers failed to assume CCI's defense, Ubee and certain other equipment suppliers and the Charter Plaintiffs reached agreement: (a) to retain APKS to represent CCI; (b) as to each equipment supplier's provisional share of defense costs in the Entropic -125 Litigation subject to adjustment if additional equipment by the same or other suppliers was subsequently accused; (c) that those costs would be billed directly to each supplier by APKS; and (d) that the Charter Plaintiffs would pre-pay the non-APKS expenses, including fees from The Dacus Firm as Texas Counsel, and seek reimbursement from each supplier quarterly for each supplier's respective share of the expenses.  Ubee agreed to pay 16.7% of CCI's defense costs (those billed directly by APKS and those billed quarterly by the Charter Plaintiffs) because Ubee's cable modems initially represented 16.7% of the total specifically accused equipment.

**ANSWER:** Ubee admits that it did not object to CCI retaining Arnold & Porter Kaye Scholer LLP ("APKS") in the Entropic -125 Litigation. Ubee admits that it did not object to CCI pre-paying certain litigation costs and sending quarterly invoices for such costs to Ubee. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 7.

8.      In January 2023, prior to Ubee's agreement to have the Charter Plaintiffs pre-pay the non-APKS expenses and seek reimbursement for the vendors quarterly, APKS began sending invoices to Ubee for costs from other third-party vendors.  APKS subsequently ceased that practice after the agreement was reached.  Beginning in February 2023, APKS provided Ubee with monthly invoices for legal fees that CCI incurred in connection with the Entropic -125 Litigation. Beginning in April 2023, the Charter Plaintiffs provided Ubee with a quarterly invoice for the remaining expenses that CCI incurred in connection with the Entropic -125 Litigation.

**ANSWER:** Ubee admits that, prior to February 2023, Ubee received requests for payment from APKS for certain third-party litigation costs purportedly relating to the Entropic -125 Litigation. Ubee admits that, after February 2023, it received invoices from CCI for additional costs purportedly relating to the Entropic -125 Litigation. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 8.

9.      Despite its agreement to pay its share of defense costs, Ubee made no payments of any invoices from APKS or the Charter Plaintiffs.  Nor did Ubee respond to repeated requests regarding the status of its payments for those invoices.  In May 2023, Ubee confirmed that it was responsible for making such payments, but indicated that it did not then have the budget for making such payments.  In June 2023, Ubee sought to renegotiate its agreement to pay its share of defense costs, which the Charter Plaintiffs refused to do.  Ubee ultimately rejected defense and indemnification.

**ANSWER:** Ubee admits that it did not make payment towards any invoice from APKS. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 9.

10.     On February 10, 2023, Entropic filed another action against CCI in the U.S. District Court for the Eastern District of Texas, Case No. 2:23-cv-052 (the "Entropic -052 Litigation").

**ANSWER:** Ubee admits that the court docket reflects that, on February 10, 2023, Entropic filed an action captioned Entropic Communications, LLC v. Charter Communications, Inc., Case No. 2:23-cv-00052 in the U.S. District Court for the Eastern District of Texas. Except as specifically admitted, Ubee lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10, and on that basis denies those allegations.

11.     On April 19, 2023, Entropic filed an amended complaint in the Entropic -052 Litigation. In the Entropic -052 Litigation, Entropic asserted that CCI's deployment of certain set-top boxes infringed two Entropic patents: U.S. Patent Nos. 11,381,866 and 11,399,206, and that these patents were continuations of U.S. Patent No. 9,210,362, which was at issue in the Entropic -125 Litigation. Entropic further stated in its infringement contentions in the Entropic -052 Litigation that its claims cover both set-top boxes and cable modems.

**ANSWER:** Ubee admits that the court docket reflects that Entropic filed a First Amended Complaint for Patent Infringement in the Entropic -052 Litigation on April 19, 2023. Except as specifically admitted, Ubee lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11, and on that basis denies those allegations.

12.     On September 29, 2023, the Charter Plaintiffs provided written notice to Ubee of the Entropic -052 Litigation, provided Ubee with a copy of the Amended Complaint and Entropic's infringement contentions, and tendered the case for defense and indemnification. Ubee has failed to respond to the Charter Plaintiffs' September 29, 2023 letter or retain counsel to defend the Charter Plaintiffs, and has denied its defense and indemnification obligations for that case as well.

**ANSWER:** Ubee admits that it received a letter dated September 29, 2023 from Daniel Boglioli with the subject "*Entropic Communications, LLC v. Charter Communications, Inc.,* Case No. 2:23-cv-052 (E.D. Tx ) (the '-052 Case')" and that the letter enclosed documents referred to as First Amended Complaint, Entropic PR 3-1 and 3-2 Disclosures, Exhibit A – Entropic Claim Chart 11, 399.206, and Exhibit B – Entropic Claim Chart 11,381,866. To the extent the allegations in this paragraph purport to summarize or characterize the September 29, 2023 letter or any of its enclosures, those documents speak for themselves, and Ubee denies any characterization of those documents inconsistent with their contents. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 12.

13.     Ubee also repeatedly refused to participate in or contribute to any effort to settle the cases with Entropic.  Ubee twice rejected the Charter Plaintiffs' requests to contribute to the settlement.  On December 10, 2023, CCI and Entropic settled the Entropic -125 Litigation, the Entropic -052 Litigation and two other litigations in the Eastern District of Texas, Case Nos. 2:23-cv-00050-JRG and 2:23-cv-00051-JRG (collectively, the "Entropic MoCA Litigations").

**ANSWER:** With respect to the first sentence of Paragraph 13, Ubee admits that it did not participate in or contribute to "any effort to settle" the cases with Entropic. To the extent the Charter Plaintiffs imply that Ubee had any obligation, or the opportunity, to participate in or contribute to "any effort to settle" the cases with Entropic, Ubee denies that it had any such obligation or opportunity, and, except as specifically admitted, Ubee denies the allegations in the first sentence of Paragraph 13. With respect to the second sentence of Paragraph 13, Ubee admits that it did not contribute to the settlement of the Entropic lawsuits against Charter Plaintiffs. To the extent these allegations imply that Ubee had any obligation to contribute to that settlement, Ubee denies that it has any such obligation and, except as specifically admitted, Ubee denies the

allegations in the second sentence of Paragraph 13. Ubee lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence in Paragraph 13, and on that basis denies those allegations.

14.    On December 29, 2023, the Charter Plaintiffs provided a written demand for Ubee to pay its share of the defense costs and settlement amount in the Entropic -125 Litigation and the Entropic -052 Litigation.  The Charter Plaintiffs informed Ubee of the methodology used to determine Ubee's share of the defense costs and the settlement amount.  The Charter Plaintiffs demanded $10.33 million for Ubee's share of the settlement amount for the Entropic -125 Litigation, $1.98 million for Ubee's share of the settlement amount for the Entropic -052 Litigation, and Ubee's share of the defense costs to date at that time—$1,705,469 for Ubee's share of the defense costs in the Entropic -125 Litigation and $53,879.75 for Ubee's share of the defense costs in the Entropic -052 Litigation.

**ANSWER:** Ubee admits that it received a letter dated December 29, 2023 from Daniel Boglioli with the subject "Demand for Payment of Share of Defense Costs and Settlement Amount – *Entropic Communications, LLC v. Charter Communications, Inc*., et al., Case No. 2:22-CV-125 (E.D. Tx) (the '-125 Case') and *Entropic Communications, LLC v. Charter Communications, Inc. et al.*, Case No. 2:23-cv-052 (E.D. Tx) (the '-052 Case)." To the extent the allegations in this paragraph purport to summarize or characterize the December 29, 2023 letter, that letter speaks for itself, and Ubee denies any characterization of the letter inconsistent with its content. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 14.

15.    For the Entropic -125 Litigation, Ubee's share of the settlement amount is $10.33 million and Ubee's share of defense costs to date is now $2,189,330.16.  For the Entropic -052

Litigation, Ubee's share of the settlement amount is $1.98 million and Ubee's share of the defense costs to date is now $92,842.42.

**ANSWER:** Ubee denies the allegations of Paragraph 15.

16.    Ubee is in material breach of its obligations under the Ubee MPA to indemnify the Charter Plaintiffs for Ubee's share of the defense costs incurred in and settlement of the Entropic -125 Litigation and the Entropic -052 Litigation.

**ANSWER:** Ubee denies the allegations of Paragraph 16. Ubee is not required to answer legal conclusions and argument.

## THE PARTIES

17.    Plaintiff Charter Communications, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business in Connecticut. CCI is a Charter Affiliate and a Charter Indemnitee as those terms are defined under the Ubee MPA.

**ANSWER:** Ubee lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 and on that basis denies those allegations.

18.    Plaintiff Charter Communications Operating, LLC is a Delaware limited liability company with its principal place of business in Missouri. CCO is a party to the Ubee MPA. The sole member of Charter Communications Operating, LLC is CCO Holdings, LLC.

    a.    CCO Holdings, LLC is a Delaware limited liability company with its principal place of business in Missouri. The sole member of CCO Holdings, LLC is CCH I Holdings, LLC.

    b.    CCH I Holdings, LLC is a Delaware limited liability company with its principal place of business in Missouri. The sole member of CCH I Holdings, LLC is CCHC, LLC.

c.  CCHC, LLC is a Delaware limited liability company with its principal place of business in Missouri.  The sole member of CCHC, LLC is Charter Communications Holding Company, LLC.

d.  Charter Communications Holding Company, LLC is a Delaware limited liability company with its principal place of business in Missouri.  The sole member of Charter Communications Holding Company, LLC is Spectrum Management Holding Company, LLC.

e.  Spectrum Management Holding Company, LLC is a Delaware limited liability company with its principal place of business in Missouri.  The sole member of Spectrum Management Holding Company, LLC is Charter Communications Holdings, LLC.

f.  Charter Communications Holdings, LLC is a Delaware limited liability company with its principal place of business in Missouri.  The members of Charter Communications Holdings, LLC are: CCH Holding Company, LLC; Insight Blocker LLC; CCH II, LLC; and Advance/Newhouse Partnership.

g.  CCH Holding Company, LLC is a Delaware limited liability company with its principal place of business in Missouri.  The sole member of CCH Holding Company LLC is CCI.

h.  Insight Blocker LLC is a Delaware limited liability company with its principal place of business in Missouri.  The sole member of Insight Blocker LLC is CCI.

i.  CCH II, LLC is a Delaware limited liability company with its principal place of business in Missouri.  The sole member of CCH II, LLC is CCI.

> j.   On information and belief, Advance/Newhouse Partnership is a New York general partnership with two partners.  The two partners are A/NP Holdings Sub LLC and A/NPC Holdings LLC, both of which are Delaware limited liability companies.
>
> k.   On information and belief, the sole member of A/NP Holdings Sub LLC is A/NPC Holdings LLC.  The members of A/NPC Holdings LLC are Newhouse Cable Holdings LLC and Advance Communications Company LLC, both of which are New York limited liability companies.  The sole member of Newhouse Cable Holdings LLC is Newhouse Broadcasting Corporation, a New York corporation with its principal place of business in New York.  The sole member of Advance Communications Company LLC is Advance Local Holdings Corp., a Delaware corporation with its principal place of business in New York.

**ANSWER:** Ubee lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18, and each of its subparts, and on that basis denies those allegations.

19.    Defendant Ubee Interactive, Inc. is a California corporation with its principal place of business in Colorado.  Ubee is a telecommunications equipment supplier that supplies equipment, software, and other services to telecommunications carriers and network service providers to facilitate, among other services, internet services.

**ANSWER:** Ubee admits that it is a corporation organized and existing under the laws of the state of California, and that its principal place of business is in Colorado. Ubee makes modems and gateways for cable and telecommunications service providers. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 19.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on diversity of citizenship because the plaintiffs and defendant are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.

**ANSWER:** Paragraph 20 states legal conclusions to which no response is required.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and provisions of the Ubee MPA.  The disputes between the Charter Plaintiffs and Ubee arise under the Ubee MPA.

**ANSWER:** Paragraph 21 states legal conclusions or arguments to which no response is required.

## FACTUAL BACKGROUND

A.     **The Charter Plaintiffs' Master Purchase Agreement with Ubee**

22.     Effective as of October 1, 2016, CCO and Ubee entered into the Ubee MPA pursuant to which CCO purchased cable modems and other equipment from Ubee.  CCI signed the Ubee MPA as the manager of CCO.

**ANSWER:** Ubee admits that it entered into the MPA with CCO effective as of October 1, 2016 for the sale of "Goods," as that term is used in the MPA, from Ubee to CCO. Ubee admits that Charter Communications, Inc. ("CCI") signed the MPA as CCO's manager. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 22.

23.     Under the Ubee MPA, Ubee agreed to indemnify, hold harmless, and defend the Charter Indemnitees (as defined in the Ubee MPA) from and against any and all  claims, damages, losses, liabilities and expenses, including attorneys' fees resulting from third party claims for patent infringement brought against the Charter Indemnitees that involved the Charter Plaintiffs' use or installation of goods supplied by Ubee.

**ANSWER:** To the extent the allegations in this paragraph purport to describe the terms of the MPA, the MPA speaks for itself, and Ubee denies any characterization of the MPA inconsistent with its terms. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 23.

24.      CCO, the Charter Affiliates, and CCO's and the Charter Affiliates' respective present and former officers, directors, shareholders, managers, members, partners, employees and agents are Charter Indemnitees under the Ubee MPA.  CCI is a Charter Affiliate and Charter Indemnitee under the Ubee MPA.

**ANSWER:** Ubee admits that "Charter Indemnitees" is defined in the MPA as "Charter, the Charter Affiliates, and the Charter Affiliates' respective present and former officers, directors, shareholders, managers, members, partners, employees, and agents." Ubee lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence in Paragraph 24, and on that basis denies those allegations. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 24.

25.      The Ubee MPA requires the Charter Plaintiffs to notify Ubee of a third party claim for patent infringement after the Charter Plaintiffs have knowledge of the claim and, upon notification, requires Ubee to assume defense of the claim.   If Ubee fails to assume defense of the claim, the Charter Plaintiffs may undertake defense of the claim and Ubee is responsible for paying the Charter Plaintiffs' defense costs and any liabilities and losses resulting from the third party claim.

**ANSWER:** To the extent the allegations in this paragraph purport to describe the terms of the MPA, the MPA speaks for itself, and Ubee denies any characterization of the MPA inconsistent

with its terms. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 25.

**B.**     ***Entropic v. Charter* -125 Litigation**

26.     On April 27, 2022, Entropic commenced the Entropic -125 Litigation against CCI. In the Entropic -125 Litigation, Entropic alleges that CCI has and continues to lease, sell, and/or distribute certain cable modems, including the "Arris AB6183 cable modem, Spectrum PC20 (e.g., the Spectrum EU2251) cable modem, and products that operate in a similar manner (the 'Accused Cable Modem Products')" and that CCI's use of the Accused Cable Modem Products infringes three patents held by Entropic, U.S. Patent Nos. 8,223,775, 8,284,690, and 10,135,682.  Ubee supplied the cable modems to CCI identified as the Spectrum EU2251.

**ANSWER:** Ubee admits that the court docket reflects that, on April 17, 2022, Entropic filed an action captioned Entropic Communications, LLC v. Charter Communications, Inc., Case No. 2:22-cv-00125 in the U.S. District Court for the Eastern District of Texas. To the extent the allegations in this paragraph purport to describe the contents of the complaint in that action, the complaint speaks for itself and Ubee denies any characterization of the complaint that is inconsistent with its contents. Ubee admits that it sold cable modems to CCO and that, on information and belief, CCO assigned some of those cable modems model numbers. Except as specifically admitted, Ubee lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 26, and on that basis denies those allegations.

27.     On May 24, 2022, Entropic filed a first amended complaint in the Entropic -125 Litigation.  On January 10, 2023, Entropic further amended its complaint to drop Spectrum Advanced Services, LLC and Spectrum Management Holding Company, LLC as defendants, leaving CCI as the sole defendant.

**ANSWER:** Ubee admits that the court docket in the Entropic -125 Litigation reflects that Entropic filed a First Amended Complaint on May 24, 2022 and a Second Amended Complaint on January 10, 2023. Except as specifically admitted, Ubee lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 27, and on that basis denies those allegations.

**C.      The Charter Plaintiffs Notify Ubee of the Entropic -125 Litigation**

28.      On June 1, 2022, the Charter Plaintiffs provided notice to Ubee of a third-party claim for patent infringement related to products sold to CCO by Ubee pursuant to CCO's agreements with Ubee, including the Ubee MPA.  The Charter Plaintiffs attached a copy of the Amended Complaint in the Entropic -125 Litigation and tendered the case to Ubee for defense and indemnification.

**ANSWER:** Ubee admits that it received a letter dated June 1, 2022 from Daniel Boglioli with the subject "*Entropic Communications, LLC v. Charter Communications, Inc., et al.,* Case No. 2:22-cv-125 (E.D. Tx)." Ubee admits that this letter enclosed a copy of the Amended Complaint in the Entropic -125 Litigation. To the extent the allegations in this paragraph purport to describe the June 1, 2022 letter or its enclosure, those documents speak for themselves, and Ubee denies any characterization of those documents inconsistent with their contents. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 28.

29.      In the June 1, 2022 letter, the Charter Plaintiffs noted that because a number of suppliers, including Ubee, were implicated by the patent infringement claims, it would be more efficient and cost effective to have the suppliers retain a single law firm to defend the litigation. Alternatively, the Charter Plaintiffs offered to retain a single law firm to represent CCI with respect to all of the accused equipment and have the suppliers contribute to the defense costs at their

proportionate share of the accused equipment. The Charter Plaintiffs further stated that Ubee could assume the defense and indemnification of its products. Finally, the Charter Plaintiffs stated that if they did not hear from Ubee, they would nonetheless seek indemnification from Ubee for any defense costs and the cost of any settlement or judgment.

**ANSWER:** To the extent the allegations in this paragraph purport to describe the June 1, 2022 letter, the letter speaks for itself, and Ubee denies any characterization of the letter inconsistent with its content. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 29.

30.    Ubee did not assume the defense of the Entropic -125 Litigation and did not retain counsel to represent CCI. Where, as here, Ubee failed to assume the defense, the Charter Plaintiffs were permitted to undertake the defense and Ubee became responsible for defense costs and expenses incurred by CCI in defending the claim as well as liabilities and losses resulting from the claim.

**ANSWER:** Ubee admits that it did not assume the defense of or retain counsel to represent CCI in the Entropic -125 Litigation. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 30.

**D.    Ubee and the Other Equipment Suppliers Each Agree to Pay A Share of CCI's Defense Costs in the Entropic -125 Litigation**

31.    When Ubee and the Charter Plaintiffs' other suppliers failed to assume CCI's defense in the Entropic -125 Litigation, Ubee and certain other equipment suppliers and the Charter Plaintiffs reached agreement: (a) to retain APKS to represent CCI; (b) as to each equipment supplier's provisional share of defense costs in the Entropic -125 Litigation subject to adjustment if additional equipment by the same or other suppliers was subsequently accused; (c) that those costs would be billed directly to each supplier by APKS; and (d) that the Charter Plaintiffs would

pre-pay the non-APKS expenses, including fees from The Dacus Firm as Texas Counsel, and seek reimbursement from each supplier quarterly for each supplier's respective share of the expenses.

**ANSWER:** Ubee admits that it did not object to CCI retaining APKS. Ubee admits that it did not object to CCI pre-paying certain litigation costs and sending quarterly invoices for such costs to Ubee. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 31.

32.    Ubee agreed to pay 16.7% of CCI's defense costs because Ubee's cable modems initially represented 16.7% of the total accused and deployed devices (cable modems and set-top boxes) identified in the First Amended Complaint.  In making that calculation, the Charter Plaintiffs noted that additional equipment by the same or other suppliers could be accused in the future, at which time adjustments to the current supplier percentages could be warranted.

**ANSWER:** Ubee denies the allegations of Paragraph 32.

33.    In August 2022, the Charter Plaintiffs provided Ubee with updates on the Entropic -125 Litigation, including that the Court had entered a Scheduling Order, a Protective Order, and a discovery order, and that deadlines had been set for discovery, preliminary claim construction, the Markman hearing and trial.  The Charter Plaintiffs also notified Ubee that they were working on a request for a proposal to retain a law firm to represent CCI in the litigation.

**ANSWER:** Ubee admits that Ubee employees Edmond Liu and Lily Hung received an email from Daniel Boglioli on August 15, 2022 regarding the case Scheduling Order, Protective Order and Discovery Order, including dates from the case schedule. To the extent the allegations in this paragraph purport to describe the August 15, 2022 email, the email speaks for itself, and Ubee denies any characterization of the email inconsistent with its content. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 33.

34.    In November 2022, the Charter Plaintiffs informed Ubee and other equipment suppliers that they had completed the process to select counsel for the litigation and that they recommended moving forward with APKS to represent CCI in the Entropic -125 Litigation along with The Dacus Firm as Texas counsel.  The Charter Plaintiffs also provided a proposed budget for APKS legal fees (excluding costs and expenses) through a trial of the case to Ubee and certain other equipment suppliers.  Under the Charter Plaintiffs' agreement with APKS, the Charter Plaintiffs are responsible to pay APKS's legal fees and costs.

**ANSWER:** Ubee admits that on November 30, 2022, Ubee employees Lily Hung and Edmond Liu received an email from Daniel Boglioli to which was attached a spreadsheet setting out responses from Goodwin Procter LLP, APKS, and Faegre Drinker Biddle & Reath for a fixed-fee pricing model together with budget. To the extent the allegations in this paragraph purport to describe the November 30, 2022 email and its attachment, those documents speak for themselves, and Ubee denies any characterization of the documents inconsistent with their content. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 34.

35.    Ubee agreed to the retention of APKS to represent CCI in the Entropic -125 Litigation and to pay Ubee's provisional allocation of the Charter Plaintiffs' defense costs.

**ANSWER:** Ubee did not object to CCI's hiring APKS to represent CCI in the Entropic -125. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 35.

36.    Subsequently, Entropic provided a more precise identification of the allegedly infringing equipment in its expert reports.  Based on that more precise identification, Ubee supplied approximately 50% of the allegedly infringing cable modems that the Charter Plaintiffs deployed.

Those allegedly infringing cable modems constitute approximately 25% of the total number of accused and deployed cable modems and set-top boxes.

**ANSWER:** Ubee lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36, and on that basis denies those allegations.

37.    In January 2023, prior to Ubee's agreement to have the Charter Plaintiffs pre-pay the non-APKS expenses and seek reimbursement for the vendors quarterly, APKS began sending invoices to Ubee for costs from other third-party vendors.  APKS subsequently ceased that practice after the agreement was reached and, therefore, non-APKS expenses were billed quarterly by the Charter Plaintiffs.  Beginning in February 2023, APKS provided Ubee with monthly invoices for APKS legal fees and costs not billed directly to the Charter Plaintiffs incurred in connection with the defense of CCI in the Entropic -125 Litigation.  Beginning in April 2023, the Charter Plaintiffs provided Ubee with quarterly invoices for additional defense expenses that CCI incurred in connection with the Entropic -125 Litigation.  Ubee made no payments of any invoices that it was presented with by APKS or the Charter Plaintiffs, nor did it respond to emails requesting the status of payment.

**ANSWER:** Ubee admits that it received invoices from APKS purportedly for litigation between Entropic and CCI. Ubee admits that, prior to February 2023, Ubee received requests for payment from APKS for certain third-party litigation costs. Ubee admits that, after February 2023, it received invoices from CCI purportedly for additional costs relating to the Entropic -125 Litigation. Ubee admits that it made no payment towards any of these invoices. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 37.

38.     On numerous occasions during the Spring of 2023, the Charter Plaintiffs raised with Ubee its failure to pay its share of defense expenses in the Entropic -125 Litigation.  In May 2023, Ubee confirmed that it was responsible for making such payments, but indicated that it did not then have the budget for making such payments.  In June 2023, Ubee sought to renegotiate its agreement to pay its share of defense costs in the Entropic -125 Litigation, which the Charter Plaintiffs refused to do, and Ubee ultimately expressly stated its position that it did not owe the Charter Plaintiffs defense and indemnification with respect to the Entropic -125 Litigation.

**ANSWER:** Ubee admits that in July 2023, Ubee employee Lily Hung sent emails to Daniel Boglioli denying Ubee's 16.7% allocation of fees and costs and denying Ubee's agreement to indemnify CCO for amounts beyond a portion of the APKS fixed-fee budget of $4,645,250. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 38.

39.     In July 2023, Entropic subpoenaed Ubee for documents and Ubee produced documents in the Entropic -125 Litigation.  Despite Ubee's refusal to pay its share of defense costs, the Charter Plaintiffs continued to keep Ubee apprised of important developments in the Entropic -125 Litigation.  Specifically, the Charter Plaintiffs provided Ubee with, among other things, the complete briefing on the claim construction, the pleadings relating to invalidity and infringement contentions, and redacted expert reports.  The Charter Plaintiffs also continued to include Ubee in calls and offered to provide Ubee with any additional information relating to the Entropic -125 Litigation.

**ANSWER:** Ubee admits that it was subpoenaed and produced documents in the Entropic -125 Litigation. Ubee admits that it received from CCI an incomplete selection of redacted filings and discovery from the Entropic -125 Litigation. Ubee admits that it participated in at least two

calls with CCI and other vendors regarding the Entropic -125 Litigation. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 39.

**E.**     ***Entropic v. Charter* -052 Litigation**

40.     On February 10, 2023, Entropic filed the Entropic -052 Litigation against CCI.  On April 19, 2023, Entropic filed an amended complaint in the Entropic -052 Litigation.  In the Entropic -052 Litigation, Entropic asserted that CCI's deployment of certain set-top boxes infringed two Entropic patents: U.S. Patent Nos. 11,381,866 and 11,399,206, and that these patents were continuations of U.S. Patent No. 9,210,362, which was at issue in the Entropic -125 Litigation.  Entropic also made clear in its infringement contentions in the Entropic -052 Litigation that it intends to read the claims on both set-top boxes and cable modems.

**ANSWER:** Ubee lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40, and on that basis denies those allegations.

**F.**     **The Charter Plaintiffs Notify Ubee of the Entropic -052 Litigation**

41.     On September 29, 2023, the Charter Plaintiffs gave written notice to Ubee of the Entropic -052 Litigation, provided Ubee with a copy of the Amended Complaint and Entropic's infringement contentions, and tendered the case to Ubee for defense and indemnification.  The infringement contentions identified Accused Cable Modem Products, including Ubee's "E31U2V1, EU2251, and EU4251" cable modems of infringing Entropic's asserted patents.

**ANSWER:** Ubee admits that it received a letter dated September 29, 2023 from Daniel Boglioli with the subject "*Entropic Communications, LLC v. Charter Communications, Inc.,* Case No. 2:23-cv-052 (E.D. Tx ) (the '-052 Case')" and that the letter enclosed documents referred to as First Amended Complaint, Entropic PR 3-1 and 3-2 Disclosures, Exhibit A – Entropic Claim Chart 11,399.206, and Exhibit B – Entropic Claim Chart 11,381,866. To the extent the allegations in this paragraph purport to describe the letter and its enclosures, these documents speak for

themselves, and Ubee denies any characterization of the letter and its enclosures inconsistent with their content. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 41.

42.    In the September 29, 2023 notice, the Charter Plaintiffs noted that, as in the Entropic -125 Litigation, due to the number of implicated suppliers, it was the Charter Plaintiffs' experience that it is more efficient and cost effective to have the suppliers retain a single law firm to defend the litigation with respect to all of the accused equipment and to have the suppliers contribute to the defense costs at their proportionate share of the accused equipment.  The Charter Plaintiffs further noted that as both set-top boxes and cable modems were accused of infringement, the Charter Plaintiffs believed it was appropriate to allocate 50% of the defense costs to the manufacturers of the Charter Plaintiffs' accused cable modems and 50% of the defense costs to the manufacturers of the Charter Plaintiffs' accused set-top boxes.

**ANSWER:** To the extent the allegations in this paragraph purport to describe the September 29, 2023 letter, the letter speaks for itself, and Ubee denies any characterization of the letter inconsistent with its content. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 42.

43.    As previously communicated to Ubee in the Entropic -125 Litigation, Ubee supplied 50% of the cable modems and approximately 25% of the total number of accused and deployed cable modems and set-top boxes.  Accordingly, the Charter Plaintiffs requested that Ubee pay 25% of the defense costs of the Entropic -052 Litigation.

**ANSWER:** To the extent the allegations in this paragraph purport to describe the September 29, 2023 letter, the letter speaks for itself, and Ubee denies any characterization of the

letter inconsistent with its content. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 43.

44.    Finally, the September 29, 2023 letter stated that the Charter Plaintiffs looked forward to working together with Ubee to effectively defend the case and that if the Charter Plaintiffs did not receive a response from Ubee, they reserved all of their rights, including the right to seek reimbursement from Ubee for any defense costs and the cost of any settlement or judgment.

**ANSWER:** To the extent the allegations in this paragraph purport to describe the September 29, 2023 letter, the letter speaks for itself, and Ubee denies any characterization of the letter inconsistent with its content. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 44.

45.    Ubee failed to respond to the Charter Plaintiffs' September 29, 2023 letter or otherwise agree to provide the Charter Plaintiffs with defense and indemnification with respect to the Entropic -052 Litigation.

**ANSWER:** Ubee admits that it did not specifically respond to the September 29, 2023 letter. Ubee further admits that it did not agree to provide the Charter Plaintiffs with defense and indemnification with respect to the Entropic -052 Litigation in response to their purported tender. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 45.

46.    On October 31, 2023, Entropic filed a Second Amended Complaint in the Entropic -052 Litigation that asserted that newly-issued U.S. Patent No. 11,785,275 was also a continuation of U.S. Patent No. 9,210,362, which was at issue in the Entropic -125 Litigation. The Second Amended Complaint accuses various devices including Ubee's "E31U2V1, EU2251, and EU4251" cable modems of infringing Entropic's asserted patents.

**ANSWER:** Ubee admits that the court docket in the Entropic -052 Litigation reflects that, on October 31, 2023, Entropic filed a Second Amended Complaint. To the extent the allegations in this paragraph purport to describe the Second Amended Complaint, the Second Amended Complaint speaks for itself and Ubee denies any characterization of the Second Amended Complaint inconsistent with its content. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 46.

**G.**    **The Charter Plaintiffs Settle the Litigations With Entropic**

47.    The Charter Plaintiffs engaged in settlement discussions with Entropic and conveyed to Ubee Entropic's offer of settlement.

**ANSWER:** Ubee admits that it received an email on November 10, 2023 regarding settlement with Entropic. To the extent the allegations in this paragraph purport to describe the November 10, 2023 email, the email speaks for itself and Ubee denies any characterization inconsistent with the email's content. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 47.

48.    Ubee twice rejected the Charter Plaintiffs' requests to contribute to the settlement. On November 17, 2023, Ubee stated that it "was unable to commit to any contribution" because "(1) Ubee does not feel comfortable about a proposal involving four cases when Ubee's products are not accused in two of the cases; and (2) the asserted claims across the four actions simply do not justify the proposed allocation of the entire settlement amount among hardware vendors only excluding Charter itself and CMTS suppliers."  On December 4, 2023, Ubee, along with other suppliers, wrote to the Charter Plaintiffs to "collectively deny Charter's request for contribution to Entropic's" settlement offer.

**ANSWER:** Ubee admits that it did not consent to the settlement with Entropic and has rejected any obligation to pay any amount thereof, and that the quotations in Paragraph 48 are

accurate excerpts from correspondence sent on behalf of Ubee. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 48.

49.    On December 10, 2023, CCI settled the Entropic -125 Litigation, the Entropic -052 Litigation and the Entropic MoCA Litigations.

**ANSWER:** Ubee lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49, and on that basis denies those allegations.

50.    On December 29, 2023, the Charter Plaintiffs provided a written demand for payment for Ubee's share of the defense costs and settlement amount in the Entropic -125 Litigation and the Entropic -052 Litigation. The Charter Plaintiffs informed Ubee of the methodology used to determine Ubee's share of the defense costs and the settlement amount. The Charter Plaintiffs demanded $10.33 million for Ubee's share of the settlement amount for the Entropic -125 Litigation, $1.98 million for Ubee's share of the settlement amount for the Entropic -052 Litigation, and Ubee's share of the defense costs to date at that time—$1,705,469 for Ubee's share of the defense costs in the Entropic -125 Litigation and $53,879.75 for Ubee's share of the defense costs in the Entropic -052 Litigation.

**ANSWER:** Ubee admits that it received a letter dated December 29, 2023 from Daniel Boglioli with the subject "Demand for Payment of Share of Defense Costs and Settlement Amount – *Entropic Communications, LLC v. Charter Communications, Inc*., et al., Case No. 2:22-CV-125 (E.D. Tx) (the '-125 Case') and *Entropic Communications, LLC v. Charter Communications, Inc. et al.*, Case No. 2:23-cv-052 (E.D. Tx) (the '-052 Case)." To the extent the allegations in this paragraph purport to describe the December 29, 2023 letter, the letter speaks for itself, and Ubee denies any characterization of the letter inconsistent with its content. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 50.

51.    For the Entropic -125 Litigation, Ubee's share of the settlement amount is $10.33 million and Ubee's share of defense costs to date is now $2,189,330.16.  For the Entropic -052 Litigation, Ubee's share of the settlement amount is $1.98 million and Ubee's share of the defense costs to date is now $92,842.42.

**ANSWER:** Ubee denies the allegations of Paragraph 51.

52.    Ubee has not made any payment of defense costs or the settlement amount in the Entropic -125 Litigation or the Entropic -052 Litigation and is in material breach of its obligations under the Ubee MPA.

**ANSWER:** Ubee admits it has not made any payment of defense costs or the settlement amount in the Entropic -125 Litigation or the Entropic -052 Litigation. Ubee denies the Charter Plaintiffs' implication that Ubee was obligated to make such payments, and except as specifically admitted, Ubee denies the allegations of Paragraph 52. Ubee is not required to answer legal conclusions and argument.

### COUNT I – Breach of Contract
(Indemnification Related to Entropic -125 Litigation)

53.    Plaintiffs repeat and reallege paragraphs 1 through 52 as if fully set forth herein.

**ANSWER:** Paragraph 53 incorporates earlier allegations, so no response is required. To the extent any response is required, Ubee repeats and incorporates by reference each and every answer in Paragraphs 1 through 53 above as if fully set forth herein.

54.    The Charter Plaintiffs and Ubee entered into the Ubee MPA.

**ANSWER:** Ubee admits that it entered into the MPA with CCO. Except as otherwise admitted, Ubee denies the allegations contained in Paragraph 54.

55.    The Ubee MPA is an enforceable agreement between the Charter Plaintiffs and Ubee.

**ANSWER:** Ubee admits that the MPA is an enforceable agreement between CCO and Ubee. Except as otherwise admitted, Ubee denies the allegations contained in Paragraph 55.

56.    At all relevant times, the Charter Plaintiffs have fully performed all the conditions, covenants, and promises required by the Ubee MPA.

**ANSWER:** Ubee denies the allegations of Paragraph 56.

57.    Pursuant to the Ubee MPA, Ubee sold cable modems to CCO that were used by the Charter Plaintiffs to provide internet services to their customers.

**ANSWER:** Ubee admits that it has sold cable modems to CCO pursuant to the MPA. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 57.

58.    Charter Communications, Inc. is a Charter Affiliate and Charter Indemnitee under the Ubee MPA.

**ANSWER:** Ubee lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58, and on that basis denies those allegations.

59.    On April 27, 2022, Entropic commenced the Entropic -125 Litigation against CCI, alleging that CCI has and continues to lease, sell, and/or distribute certain cable modems, including the "Arris AB6183 cable modem, Spectrum PC20 (e.g., the Spectrum EU2251) cable modem, and products that operate in a similar manner (the 'Accused Cable Modem Products')" and that CCI's use of the Accused Cable Modem Products infringes three patents held by Entropic. Ubee supplied the cable modems to the Charter Plaintiffs identified as the Spectrum EU2251.

**ANSWER:** Ubee admits that the court docket reflects that, on April 17, 2022, Entropic filed an action captioned Entropic Communications, LLC v. Charter Communications, Inc., Case No. 2:22-cv-00125 in the U.S. District Court for the Eastern District of Texas. To the extent the

allegations in this paragraph purport to describe the contents of the complaint in that action, the complaint speaks for itself and Ubee denies any characterization of the complaint that is inconsistent with its contents. Ubee admits that it sold cable modems to CCO and that, on information and belief, CCO assigned some of those cable modems model numbers. Except as specifically admitted, Ubee lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 59, and on that basis denies those allegations.

60.     The Charter Plaintiffs provided notice of the Entropic -125 Litigation to Ubee on June 1, 2022 and tendered the case for defense and indemnification.  Ubee did not assume the defense of the Entropic -125 Litigation or retain counsel to represent CCI.

**ANSWER:** To the extent the allegations in the first sentence of this paragraph purport to describe the June 1, 2022 letter, the letter speaks for itself, and Ubee denies any characterization of the letter inconsistent with its content. Ubee admits that it did not assume the defense of or engage counsel to defend itself or CCI in the Entropic -125 Litigation. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 60.

61.     Because Ubee failed to assume CCI's defense, the Charter Plaintiffs undertook the defense and Ubee is required under the  Ubee MPA to  reimburse the Charter Plaintiffs for defense costs and any settlement amount.

**ANSWER:** Ubee denies the allegations of Paragraph 61.

62.     Additionally, when Ubee and the Charter Plaintiffs' other suppliers failed to assume CCI's defense of the Entropic -125 Litigation, each agreed to pay for its respective share of the Charter Plaintiffs' defense costs based on the supplier's respective share of the specifically accused equipment.  The Charter Plaintiffs calculated Ubee's share based on the percentage of allegedly infringing  equipment  identified  in  paragraph  11  of  the  First  Amended  Complaint  that  Ubee

supplied as compared to the total number of allegedly infringing cable modems and set-top boxes that the Charter Plaintiffs deployed. Ubee supplied 16.7% of the total accused and deployed devices (cable modems and set-top boxes) identified in the First Amended Complaint in the Entropic -125 Litigation.

**ANSWER:** Ubee denies the allegations in the first sentence of Paragraph 62. Ubee lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 62, and on that basis denies those allegations.

63.    In making that calculation, the Charter Plaintiffs noted that additional equipment by the same or other suppliers could be accused in the future, at which time adjustments to the current suppliers percentages could be warranted. Subsequently, Entropic provided a more precise identification of the allegedly infringing equipment in its expert reports. Based on that information, Ubee supplied approximately 50% of the allegedly infringing cable modems that the Charter Plaintiffs deployed. Those allegedly infringing cable modems constitute approximately 25% of the total number of accused and deployed cable modems and set-top boxes.

**ANSWER:** Ubee lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63, and on that basis denies those allegations

64.    In January 2023, prior to Ubee's agreement to have the Charter Plaintiffs pre-pay the non-APKS expenses and seek reimbursement for the vendors quarterly, APKS began sending invoices to Ubee for costs from other third-party vendors. APKS subsequently ceased that practice after the agreement was reached and, therefore, non-APKS expenses were billed quarterly by the Charter Plaintiffs. Beginning in February 2023, APKS provided Ubee with monthly invoices for APKS legal fees and costs not billed directly to the Charter Plaintiffs incurred in connection with the defense of CCI in the Entropic -125 Litigation. Beginning in April 2023, the Charter Plaintiffs

provided Ubee with quarterly invoices for additional defense expenses that CCI incurred in connection with the Entropic -125 Litigation.  Ubee made no payments of any invoices that it was presented with by APKS or the Charter Plaintiffs, nor did it respond to emails requesting the status of payment.

**ANSWER:** Ubee admits that it received invoices from APKS purportedly for litigation between Entropic Communications, LLC and Charter Communications, Inc. Ubee admits that, prior to February 2023, Ubee received requests for payment from APKS for certain third-party litigation costs. Ubee admits that, after February 2023, it received invoices from CCO purportedly for additional costs relating to the -125 Litigation. Ubee admits that it made no payment towards any of these invoices. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 64.

65.    Ubee has refused to pay any of the invoiced amounts for defense costs that the Charter Plaintiffs incurred in defending the Entropic -125 Litigation.

**ANSWER:** Ubee admits that it has not paid any invoices that it received purportedly in connection with the Entropic -125 Litigation. To the extent that these allegations imply that Ubee had any obligation to pay these invoices, Ubee denies that it has any such obligation and, except as specifically admitted, Ubee denies the allegations of Paragraph 65.

66.    Ubee also repeatedly refused to participate in or contribute to any effort to settle the cases with Entropic.  Ubee twice rejected the Charter Plaintiffs' requests to contribute to the settlement.

**ANSWER:** With respect to the first sentence of Paragraph 66, Ubee admits that it did not participate in or contribute to "any effort to settle" the cases with Entropic. To the extent the Charter Plaintiffs imply that Ubee had any obligation, or the opportunity, to participate in or

contribute to "any effort to settle" the cases with Entropic, Ubee denies that it had any such obligation or opportunity, and, except as specifically admitted, Ubee denies the allegations in the first sentence of Paragraph 66. With respect to the second sentence of Paragraph 66, Ubee admits that it did not contribute to the settlement of the Entropic lawsuits against Charter Plaintiffs. To the extent these allegations imply that Ubee had any obligation to contribute to that settlement, Ubee denies that it has any such obligation and, except as specifically admitted, Ubee denies the allegations in the second sentence of Paragraph 66.

67.    On December 10, 2023, the Charter Plaintiffs and Entropic settled the Entropic -125 Litigation, together with the Entropic -052 Litigation and the Entropic MoCA Litigations.

**ANSWER:** Ubee lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67, and on that basis denies those allegations

68.    On December 29, 2023, the Charter Plaintiffs provided a written demand for payment for Ubee's share of the defense costs and settlement amount in the Entropic -125 Litigation, together with the Entropic -052 Litigation.  The Charter Plaintiffs informed Ubee of the methodology used to determine Ubee's share of the defense costs and the settlement amount for those litigations.

**ANSWER:** To the extent the allegations in this paragraph purport to describe the December 29, 2023 letter, the letter speaks for itself, and Ubee denies any characterization of the letter inconsistent with its content.

69.    For the Entropic -125 Litigation, Ubee's share of the settlement amount is $10.33 million and Ubee's share of defense costs to date is $2,189,330.16.

**ANSWER:** Ubee denies the allegations of Paragraph 69.

70.    Ubee has refused to pay its share of the defense costs and settlement of the Entropic -125 Litigation and is in material breach of its obligations under the Ubee MPA.

**ANSWER:** Ubee admits that it has not made any payments towards defense costs and settlement of the Entropic -125 Litigation. To the extent these allegations imply that Ubee is obligated to make such payments, Ubee denies that it has any such obligation and, except as specifically admitted, Ubee denies the allegations of Paragraph 70.

71.    The Charter Plaintiffs suffered damages as a result of Ubee's material breaches. The amount that Ubee owes or will owe in connection with the Entropic -125 Litigation, including liability for its share of the settlement and for defense costs, exceeds $75,000.

**ANSWER:** Ubee denies the allegations of Paragraph 71.

**COUNT II – Breach of Contract**
(Indemnification Related to Entropic -052 Litigation)

72.    Plaintiffs repeat and reallege paragraphs 1 through 71 as if fully set forth herein.

**ANSWER:** Paragraph 72 incorporates earlier allegations, so no response is required. To the extent any response is required, Ubee repeats and incorporates by reference each and every answer in Paragraphs 1 through 72 above as if fully set forth herein.

73.    The Charter Plaintiffs and Ubee entered into the Ubee MPA.

**ANSWER:** Ubee admits that it entered into the MPA with CCO. Except as otherwise admitted, Ubee denies the allegations contained in Paragraph 73.

74.    The Ubee MPA is an enforceable agreement between the Charter Plaintiffs and Ubee.

**ANSWER:** Ubee admits that the MPA is an enforceable agreement between CCO and Ubee. Except as otherwise admitted, Ubee denies the allegations contained in Paragraph 74.

75.    At all relevant times, the Charter Plaintiffs have fully performed all the conditions, covenants, and promises required by the Ubee MPA.

**ANSWER:** Ubee denies the allegations of Paragraph 75.

76.    Pursuant to the Ubee MPA, Ubee sold cable modems to CCO that were used by the Charter Plaintiffs to provide internet services to their customers.

**ANSWER:** Ubee admits that it has sold cable modems to CCO pursuant to the MPA. Except as specifically admitted, Ubee lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 76, and on that basis denies those allegations.

77.    On February 10, 2023, Entropic commenced the Entropic -052 Litigation against CCI, asserting that the Charter Plaintiffs' deployment of certain set-top boxes infringed two Entropic patents: U.S. Patent Nos. 11,381,866 and 11,399,206, and that these patents were continuations of U.S. Patent No. 9,210,362, which was at issue in the Entropic -125 Litigation. Entropic also made clear in its infringement contentions in the Entropic -052 Litigation that it intends to read the claims on both set-top boxes and cable modems.  The infringement contentions identified Accused Cable Modem Products, including Ubee's "E31U2V1, EU2251, and EU4251" cable modems of infringing Entropic's asserted patents.

**ANSWER:** Ubee admits that the court docket reflects that, on February 10, 2023, Entropic filed an action captioned Entropic Communications, LLC v. Charter Communications, Inc., Case No. 2:22-cv-00052 in the U.S. District Court for the Eastern District of Texas. To the extent the allegations in this paragraph purport to describe the contents of the complaint in that action, the complaint speaks for itself and Ubee denies any characterization of the complaint that is inconsistent with its contents. Ubee admits that it sold cable modems to CCO and that, on

information and belief, CCO assigned some of those cable modems model numbers. Except as specifically admitted, Ubee lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 77, and on that basis denies those allegations.

78.    On October 31, 2023, Entropic filed a Second Amended Complaint in the Entropic -052 Litigation that asserted that newly-issued U.S. Patent No. 11,785,275 was also a continuation of U.S. Patent No. 9,210,362, which was at issue in the Entropic -125 Litigation.  The Second Amended Complaint accuses various devices including Ubee's "E31U2V1, EU2251, and EU4251" cable modems of infringing Entropic's asserted patents.

**ANSWER:** Ubee admits that the court docket in the Entropic -052 Litigation reflects that, on October 31, 2023, Entropic filed a Second Amended Complaint. To the extent the allegations in this paragraph purport to describe the Second Amended Complaint, the Second Amended Complaint speaks for itself and Ubee denies any characterization of the Second Amended Complaint inconsistent with its content. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 78.

79.    Charter Communications, Inc. is a Charter Affiliate and Charter Indemnitee under the Ubee MPA.

**ANSWER:** Ubee lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79, and on that basis denies those allegations.

80.    The Charter Plaintiffs provided notice of the Entropic -052 Litigation to Ubee on September 29, 2023 and tendered the case for defense and indemnification.  Ubee did not assume the defense of the Entropic -052 Litigation or retain counsel to represent CCI.

**ANSWER:** To the extent the allegations in the first sentence of this paragraph purport to describe the September 29, 2023 letter, the letter speaks for itself, and Ubee denies any

characterization of the letter inconsistent with its content. Ubee admits that it did not hire counsel to defend itself or CCI in the Entropic -052 Litigation. Except as specifically admitted, to the extent any response is required, Ubee denies the allegations of Paragraph 80

81.    Because Ubee failed to assume CCI's defense, the Charter Plaintiffs undertook the defense of the case and Ubee is required to reimburse the Charter Plaintiffs for defense costs and any settlement amount.

**ANSWER:** Ubee denies the allegations of Paragraph 81.

82.    Ubee is responsible for payment of 25% of the defense costs in the Entropic -052 Litigation.

**ANSWER:** Ubee denies the allegations of Paragraph 82.

83.    Ubee has failed to respond to the Charter Plaintiffs' requests for defense and indemnification and has denied its defense and indemnification obligations.

**ANSWER:** Ubee admits that it has not agreed to defend and indemnify the Charter Plaintiffs in the Entropic -052 Litigation. To the extent these allegations imply that Ubee was obligated to defend and indemnify the Charter Plaintiffs, Ubee denies that it had any such obligation and, except as specifically admitted, Ubee denies the allegations of Paragraph 83.

84.    Ubee also repeatedly refused to participate in or contribute to any effort to settle the cases with Entropic.  Ubee twice rejected the Charter Plaintiffs' requests to contribute to the settlement.

**ANSWER:** With respect to the first sentence of Paragraph 84, Ubee admits that it did not participate in or contribute to "any effort to settle" the cases with Entropic. To the extent the Charter Plaintiffs imply that Ubee had any obligation, or the opportunity, to participate in or contribute to "any effort to settle" the cases with Entropic, Ubee denies that it had any such

obligation or opportunity, and, except as specifically admitted, Ubee denies the allegations in the first sentence of Paragraph 84. With respect to the second sentence of Paragraph 84, Ubee admits that it did not contribute to the settlement of the Entropic lawsuits against Charter Plaintiffs. To the extent these allegations imply that Ubee is obligated to contribute to that settlement, Ubee denies that it has any such obligation and, except as specifically admitted, Ubee denies the allegations of the second sentence of Paragraph 84.

85.    On December 10, 2023, the Charter Plaintiffs and Entropic settled the Entropic -052 Litigation, together with the Entropic -125 Litigation and the Entropic MoCA Litigations.

**ANSWER:** Ubee lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85, and on that basis denies those allegations.

86.    On December 29, 2023, the Charter Plaintiffs provided a written demand for payment for Ubee's share of the defense costs and settlement amount in the Entropic -052 Litigation, together with the Entropic -125 Litigation.  The Charter Plaintiffs informed Ubee of the methodology used to determine Ubee's share of the defense costs and the settlement amount.

**ANSWER:** To the extent the allegations of this paragraph purport to describe the December 29, 2023 letter, the letter speaks for itself, and Ubee denies any characterization of the letter inconsistent with its content.

87.    For the Entropic -052 Litigation, Ubee's share of the settlement amount is $1.98 million and Ubee's share of the defense costs to date is $92,842.42.

**ANSWER:** Ubee denies the allegations of Paragraph 87.

88.    Ubee has refused to pay its share of defense costs or the settlement of the Entropic -052 Litigation and is in material breach of its obligations under the Ubee MPA.

**ANSWER:** Ubee admits that it has not made any payments towards defense costs and settlement of the Entropic -052 Litigation. To the extent these allegations imply that Ubee is obligated to make such payments, Ubee denies that it has any such obligation and, except as specifically admitted, Ubee denies the allegations of Paragraph 88.

89.     The Charter Plaintiffs suffered damages as a result of Ubee's material breaches. The amount that Ubee owes or will owe in connection with the Entropic -052 Litigation, including liability for its share of the settlement and for defense costs, exceeds $75,000.

**ANSWER:** Ubee denies the allegations of Paragraph 89.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court issue judgment for Plaintiffs and against Defendant as follows:

a)      On their first claim for relief, awarding Plaintiffs such damages as are allowed by law and determined to have been sustained by them as a result of Defendant's material breaches of its obligations under the Ubee MPA to pay its share of the defense costs and settlement of the Entropic -125 Litigation;

b)      On their second claim for relief, awarding Plaintiffs such damages as are allowed by law and determined to have been sustained by them as a result of Defendant's material breaches of its obligations under the Ubee MPA to pay its share of the defense costs and settlement of the Entropic -052 Litigation; and

c)      Granting Plaintiffs such other, further, and different relief as it finds just, necessary, and proper under the circumstances.

**ANSWER:** Ubee denies that Plaintiffs are entitled to any of the requested relief.

## AFFIRMATIVE DEFENSES

By alleging the defenses set forth below, Ubee intends no alteration of the burden of proof that otherwise exists with respect to any particular issue. Furthermore, all such defenses are pleaded in the alternative and do not constitute an admission that Plaintiffs are entitled to any relief.

1.      Plaintiffs' Complaint fails to state a claim upon which relief may be granted because Plaintiffs' claims seek indemnification for Plaintiffs' own intentional or reckless infringement of the relevant patents in the Entropic -125 Litigation and Entropic -052 Litigation and therefore Plaintiffs' claims fail because such indemnification would be unlawful and/or violate public policy.

2.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs intentionally or recklessly infringed the relevant patents in the Entropic -125 Litigation and Entropic -052 Litigation, and indemnification for such conduct would be unlawful.

3.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs intentionally or recklessly infringed the relevant patents in the Entropic -125 Litigation and Entropic -052 Litigation, and indemnification for such conduct would violate public policy.

4.      Plaintiffs' claims are barred, in whole or in part, because the sums Plaintiffs claim for defense costs and settlement do not relate to the installation, use, deployment or exploitation of the Goods provided by Ubee, as that term is used in the MPA.

5.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to take reasonable efforts to mitigate their damages, if any.

6.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs owe monies to Ubee, and Ubee has the right to recoupment of the amount owed, and any purported damages recoverable by Plaintiffs must be reduced against this amount.

7.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs owe monies to Ubee, and Ubee has the right to a setoff of the amount owed, and any purported damages recoverable by Plaintiffs must be reduced against this amount.

8.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs increased the risks to and/or prejudiced the rights of Ubee by withholding or failing to disclose material information pertaining to the Entropic -125 Litigation and/or Entropic -052 Litigation.

9.      Plaintiffs' claims are barred, in whole or in part, because Plaintiff failed to provide adequate relevant information pertaining to the Entropic -125 Litigation and/or Entropic -052 Litigation as required by the MPA.

10.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to timely and/or adequately give notice and tender the defense of the Entropic -125 Litigation and/or Entropic -052 Litigation.

11.     Plaintiffs' claims are barred, in whole or in part, because, to the extent that Ubee purportedly agreed to pay for any portion of Plaintiffs' defense cost or of their settlement of the underlying litigation, such agreement, if any, was induced by fraud, by way of material misrepresentations and/or omissions concerning matters of which Plaintiffs had superior knowledge, and upon which Ubee reasonably relied. Allegations in support of this defense include, without limitation:

    a.      On June 29, 2022, Daniel Boglioli, an in-house lawyer for Plaintiffs, sent Ubee an email, stating that Ubee's share of the accused products in the Entropic -125 Litigation was 16.7%, and that therefore Ubee should agree to this percentage of defense costs and any future settlement. By this time, however, representatives of Plaintiffs, including Boglioli, knew, or should

have known, but Ubee did not and could not reasonably have known, that Ubee's actual purported share of any liability was lower.

b.   Specifically, Plaintiffs knew or should have known from Entropic's allegations that the vast majority of liability for the case involved services offered on or through other devices not supplied by Ubee, which were not subject to indemnification under the MPA. An example of this is the CMTS, through which Plaintiffs control various services accused of infringement in the Entropic-125 Litigation. Unlike a cable modem, which is typically deployed one per household, a CMTS services many households—and those households also would have a cable modem. By calculating responsibility based on accused products—i.e., percentages of equipment deployed—Plaintiffs deliberately shifted a disproportionate amount of responsibility onto cable modem manufacturers.

c.   Tellingly, the Plaintiffs have repeatedly refused to explain their 16.7% calculation to Ubee.

d.   On November 30, 2022, Boglioli sent Ubee an email attaching a spreadsheet that provided the defense-cost proposals for the Entropic -125 Litigation by APKS and other law firms. The proposals were based on "assumptions" that Plaintiffs placed in the spreadsheet, including that there would be only 5-10 depositions of Plaintiffs' fact witnesses, 5 depositions of third parties, 9 inventor depositions, 1-2 depositions of Entropic fact witnesses, and 5 depositions of Entropic's experts. By this time, however, representatives of Plaintiffs, including Boglioli, knew, but Ubee did not and could not reasonably have known, that the Entropic -125 Litigation required substantially more discovery, including more fact and expert depositions. They also knew, but Ubee did not and could not reasonably have known, that these assumptions would cause Ubee to believe incorrectly that the potential liability would be relatively low, when in reality, potential liability would be substantial because, amongst other reasons, of Plaintiffs' refusal to stop infringing activity (such as the activation of the full band capture functionality) that Plaintiffs only later admitted provided no value to Plaintiffs.

e.   On December 5, 2022, Boglioli emailed Ubee, stating that the "$4,645,250" capped fee proposed by APKS "would be the legal fees **through trial** (should trial be necessary)." By this time, however, representatives of Plaintiffs, including Boglioli, knew, but Ubee did not and could not reasonably have known, the amount was based on assumptions which Plaintiffs knew or should have known to be false, and that trial was reasonably certain. They also knew that this statement would cause Ubee to believe incorrectly that Ubee's responsibility for defense costs, if any, would be capped at 16.7% of $4,645,250.

      f.      In reasonable reliance upon these and other materially false representations and/or material omissions by Boglioli and other representatives of Plaintiffs, Ubee purportedly agreed to (i) taking on a 16.7% share of the settlement for the Entropic -125 Litigation; (ii) Plaintiffs' hiring of APKS as counsel; and (iii) taking on a 16.7% share of APKS's legal fees.

12.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs represented to Ubee that it would be responsible for paying a share of defense costs calculated using APKS's "fixed fee" and therefore Plaintiffs, to the extent they are entitled to recover any defense costs (which they are not), are estopped from seeking to recover defense costs from Ubee for amounts in excess of the stated share of the "fixed fee."

13.     Ubee does not knowingly or intentionally waive any affirmative defenses and reserves the right to assert any additional defense and/or claim of avoidance as may be appropriate based on the facts or issues disclosed during the course of additional investigation or discovery.

WHEREFORE, Ubee respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice and enter judgment in favor of Ubee, award Ubee its costs and fees incurred herein, and grant other and further relief as the Court deems just and proper.

## UBEE'S COUNTERCLAIMS

For its Counterclaims against Plaintiff/Counterclaim Defendant Charter Communications Operating, LLC ("CCO") and Counterclaim Defendant Charter Distribution LLC ("CD"), Defendant/Counterclaim Plaintiff Ubee Interactive Inc. ("Ubee") states as follows:

### The Parties

1.     Ubee Interactive Inc. is a California corporation with its principal place of business in Colorado.

2.      Upon information and belief, Charter Communications Operating, LLC is a Delaware limited liability company with its principal place of business in Missouri.

3.      Upon information and belief, Charter Distribution LLC is a Delaware limited liability company with its principal place of business in Missouri.

<u>Jurisdiction</u>

4.      The Court has jurisdiction over Ubee's counterclaims pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest. The Court also has jurisdiction over Ubee's counterclaims pursuant to 28 U.S.C. § 1367(a) and in accordance with Fed. R. Civ. P. 13(b). Ubee will separately move to add CD as a Counterclaim Defendant pursuant to Fed R. Civ. P. 13(h), 19 and 20.

<u>Factual Background</u>

5.      Counterclaim Plaintiff Ubee supplies modems and gateways for telecommunications companies. Ubee manufactures these products according to its customers' specifications so that they are operable on customers' communications networks.

6.      On information and belief, Counterclaim Defendant CCO is an affiliate of cable provider Charter Communications, Inc. CCO executed the agreements at issue in these counterclaims. On information and belief, Counterclaim Defendant CD is an affiliate of CCO and the entity through which CCO issues purchase orders and pays invoices for purposes relevant to these counterclaims (CCO and CD together hereinafter called "Charter").

7.      Charter is a longtime customer of Ubee. Ubee manufactures cable modems for Charter pursuant to Charter's product specifications. Under Ubee and Charter's general practice, the parties agree upon a price for the cable modems. This price includes the costs for all components of the modems, which Ubee procures and pays for directly from various vendors. The agreed modem

price is coded into Charter's purchase order ("PO") system. Charter issues POs for the purchase of modems from Ubee. Ubee, in turn, orders the necessary components and issues invoices to Charter for the cable modem POs, and Charter remits payment to Ubee on these invoices.

### Microchip Vendor's Component Costs

8.    A necessary component within the Charter cable modems manufactured by Ubee is a specialized microchip set supplied by a vendor referred to herein as "Microchip Vendor."[1] To Ubee's understanding, these are the only microchips on the market that meet the product specifications provided by Charter for the modems.

9.    The purchase price for these microchips is negotiated between Charter and Microchip Vendor. Ubee then purchases the microchips through Microchip Vendor's authorized dealer based upon the price negotiated between Charter and Microchip Vendor.

### The Microchip Vendor Surcharge

10.    Beginning in March 2021, Microchip Vendor began to experience COVID-related supply-chain issues. Due to these supply constraints, Microchip Vendor informed Ubee and Charter that it would be applying a temporary surcharge to orders to ensure timely delivery of products. Ubee is informed and believes that Microchip Vendor and Charter negotiated the terms of this temporary surcharge, and reached an agreement that the microchips would be subject to a per unit surcharge at an agreed amount (the "Microchip Vendor Surcharge"). On information and belief, Ubee alleges that the term of the Microchip Vendor-Charter agreement regarding the Microchip Vendor Surcharge does not expire until the end of 2024.

---

[1] The identity of Microchip Vendor and its per-unit prices for the overages addressed in these counterclaims constitute confidential and proprietary business information. Accordingly, this information is not identified in these counterclaims. Counterclaim Plaintiff intends to provide such information in discovery if requested.

11.     Like the cost of the Microchip Vendor microchips, the Microchip Vendor Surcharge was to be paid directly by Ubee to Microchip Vendor. Charter agreed to reimburse Ubee for the Microchip Vendor Surcharge. Under its PO system, Charter is unable to make any adjustments to product prices except to reflect a permanent price change. As a result, Charter could not adjust the modem price to include the Microchip Vendor Surcharge. Instead, Ubee and Charter agreed that the Microchip Vendor Surcharge would be processed and paid for under separate POs and invoices (i.e., not together with the purchase of the modems).

12.     This arrangement was memorialized in a Letter of Understanding dated February 7, 2022 between Charter and Ubee (the "Microchip Vendor LOU"). In the Microchip Vendor LOU, Charter and Ubee agreed that Ubee would continue to purchase the Microchip Vendor microchips and that Charter would reimburse Ubee for the Microchip Vendor Surcharge for products shipped during the period between March 1 and December 31, 2022. The Microchip Vendor LOU provides that Ubee would separately invoice the Microchip Vendor Surcharges to Charter for payment.

13.     In accordance with the parties' understanding set forth in the Microchip Vendor LOU, Ubee issued seven (7) invoices to Charter for the Microchip Vendor Surcharges paid by Ubee for cable modems it shipped to Charter during the applicable time period (viz., 3/1/2022-12/31/2022), and Charter remitted payments to Ubee for same.

The Microchip Vendor Price Increase

14.     Although the Microchip Vendor LOU did not expressly reference cable modems that Ubee shipped to Charter after December 31, 2022, for the modems that Ubee shipped to Charter starting in 2023, Microchip Vendor continued to assess the Microchip Vendor Surcharge on microchips purchased by Ubee. In addition, Microchip Vendor informed Ubee that it would also be

implementing a per unit price increase (on top of the Microchip Vendor Surcharge) for all microchips it sold to Ubee, starting in 2023 (the "Microchip Vendor Price Increase").

15.      As a result, in early 2023, Ubee contacted Charter to enter into an extension and amendment of the Microchip Vendor LOU to address both the continued reimbursement of the Microchip Vendor Surcharge, plus the new Microchip Vendor Price Increase for the Microchip Vendor microchips, for cable modems Ubee shipped to Charter starting in 2023. However, Charter claimed that it was not yet ready to execute such an extension and amendment of the Microchip Vendor LOU, because Charter was purportedly still negotiating with Microchip Vendor over the specific amount of the Microchip Vendor Price Increase, so the parties (i.e., Charter and Microchip Vendor) supposedly had yet to agree upon a firm, new price for the Microchip Vendor microchips.

16.      Because Charter claimed it had not reached an agreement with Microchip Vendor as to the final cost of the Microchip Vendor Price Increase, Ubee was not able to obtain an extension and amendment of the Microchip Vendor LOU.

17.      In order to timely fulfill Charter's ongoing POs for cable modems, for 2023, Ubee paid all of the Microchip Vendor Surcharges (for the first half of 2023) and Microchip Vendor Price Increases in advance, on the understanding that they would later be reimbursed by Charter. Notably, Charter accepted delivery of all the cable modems Ubee shipped starting in 2023, and, on information and belief, deployed said Ubee cable modems to Charter's customers.

18.      Charter was aware that, starting in 2023, Ubee had begun paying in advance the additional Microchip Vendor Price Increase, and that Ubee was continuing to pay the Microchip Vendor Surcharge. Moreover, Charter knew that Microchip Vendor required Ubee to make full payment (inclusive of the Microchip Vendor Price Increase and, for the first half of 2023, the Microchip Vendor Surcharge) before Microchip Vendor would authorize delivery of microchips to

Ubee for the manufacture of the Charter modems. Charter continued to issue Ubee POs for cable modems throughout 2023 that required the Microchip Vendor microchips, with the expectation that these modems be timely delivered, and well knowing that this would require Ubee to front the cost of the Microchip Vendor Surcharge (in the first half of 2023) and Microchip Vendor Price Increase.

19.     Charter and Ubee both understood that Charter was obligated to reimburse Ubee for all the Microchip Vendor Surcharges and Microchip Vendor Price Increases that Ubee had paid in order to continue to manufacture and deliver modems to Charter in 2023.

20.     Near the end of 2023, Charter claimed that it still had not reached an agreement with Microchip Vendor regarding the final cost of the Microchip Vendor Price Increase. Ubee proceeded to issue five (5) invoices to Charter reflecting all Microchip Vendor Surcharges and Microchip Vendor Price Increases paid in advance by Ubee for all cable modems it shipped to Charter in 2023. These invoices together amounted to $11,055,061.54—comprised of $2,359,624.96 for the Microchip Vendor Price Increase, and $8,695,436.58 for the Microchip Vendor Surcharge. To date, Charter has failed and refused to make any payment towards this outstanding amount. Charter has never disputed any of these invoices.

**Other Vendors' Components Costs**

21.     In addition to the Microchip Vendor microchips, COVID-related supply issues also impacted other vendors' components that Ubee needed to build cable modems for Charter. Examples of these components include: DDR3 memory, flash memory, freight, packing materials, printed circuit boards, circuit board housing, soldering paste, power supply units, and additional microchips.

22.     Like the Microchip Vendor, certain vendors of these other components began to apply surcharges to ensure the timely delivery of products amid supply constraints. And as with the Microchip Vendor Surcharge, Charter and Ubee entered into Letters of Understanding to address

these other surcharges—Ubee would pay the surcharges directly to the vendors, and later invoice and be reimbursed by Charter. Such other vendors—separate and apart from the Microchip Vendor—with respect to whom Charter and Ubee entered into Letters of Understanding pertaining to their surcharges, shall be referred to herein as "Other Vendors".

23.     On August 31, 2023, Ubee and CCO executed a Letter of Understanding ("Other Vendors LOU") setting forth the terms by which CCO would reimburse Ubee for surcharges on Other Vendors' components for cable modems that Ubee shipped to Charter during the period between January 1 and December 31, 2023 (the "Other Vendors Surcharge").

24.     Between October 19 and December 21, 2023, Ubee issued five (5) invoices for Other Vendors Surcharges pursuant to Charter-issued POs and under the Other Vendors LOU. Charter paid each of these five invoices in full.

25.     In January 2024, Ubee sent a sixth invoice to Charter under the Other Vendors LOU for Other Vendors Surcharges in the amount of $328,641.60, which pertained to cable modems that Ubee shipped to Charter during the period beginning July 1, 2023 and ending December 31, 2023. To date, Charter has failed and refused to pay any portion of this amount owed for the Other Vendors Surcharges.

## COUNT I – BREACH OF IMPLIED-IN-FACT CONTRACT
## (MICROCHIP VENDOR SURCHARGE AND MICROCHIP VENDOR PRICE INCREASE)

26.     Ubee incorporates by reference the allegations in Paragraphs 1–25.

27.     With Charter's knowledge and at Charter's request, Ubee paid, in advance, Microchip Vendor Surcharges and Microchip Vendor Price Increases for cable modems manufactured for Charter and shipped in 2023, with the expectation, which was fully and clearly understood by Charter, that Ubee would be reimbursed by Charter for these payments.

28.     By engaging in the course of conduct described above, Ubee and Charter intended to enter into, and did enter into, a valid and enforceable implied-in-fact contract whereby Charter would reimburse Ubee for the Microchip Vendor Surcharges and Microchip Vendor Price Increases advanced by Ubee for cable modems Ubee shipped to Charter during 2023, upon receipt of Ubee's invoices for these amounts (the "Implied Agreement").

29.     Pursuant to the terms of the Implied Agreement, Ubee was permitted to invoice Charter for Microchip Vendor Surcharges and Microchip Vendor Price Increases that Ubee paid in advance to Microchip Vendor for cable modems that Ubee shipped to Charter in 2023, and Charter was obligated to pay all such invoices.

30.     Charter failed to meet its obligations under the terms of the Implied Agreement by refusing to pay invoices issued by Ubee for Microchip Vendor Surcharges and Microchip Vendor Price Increases that Ubee paid in advance for cable modems that it shipped to Charter, and which Charter received and accepted, during 2023. The total amount that Charter has refused to pay is $11,055,061.54.

31.     Based on the foregoing conduct and omissions, Charter has materially breached the terms of the Implied Agreement. Charter's breaches were knowing and willful.

32.     Ubee fully performed its contractual obligations under the Implied Agreement, except insofar as these obligations have been waived by Charter or excused by Charter's failure to perform under the Implied Agreement.

33.     As a direct, proximate, and foreseeable result of the conduct and omissions alleged above, Ubee has suffered damages in an amount to be determined at trial, including, at a minimum, approximately $11,055,061.54 in amounts that Charter owes to Ubee as a result of Charter's failure to make payments in breach of the terms of the Implied Agreement.

## COUNT II – BREACH OF EXPRESS CONTRACT

## (OTHER VENDORS SURCHARGE)

34.     Ubee incorporates by reference the allegations in Paragraphs 1–33.

35.     Ubee entered into a valid and binding written agreement with Charter—namely, the Other Vendors LOU—pursuant to which Charter was to reimburse Ubee for Other Vendors Surcharges that Ubee paid in advance to manufacture cable modems for Charter, and which were shipped to Charter in 2023.

36.     Pursuant to the terms of the Other Vendors LOU, Ubee was permitted to invoice Charter for Other Vendors Surcharges, and Charter would pay such invoices within 60 days of receipt.

37.     Charter failed to meet its obligations under the terms of the Other Vendors LOU by refusing to pay an invoice issued by Ubee for Other Vendors Surcharges pertaining to cable modems that Ubee shipped to Charter during the period beginning July 1, 2023 and ending December 31, 2023. The total amount that Charter has refused to pay is $328,641.60.

38.     Based on the foregoing conduct and omissions, Charter has materially breached the terms of the Other Vendors LOU. Charter's breaches were knowing and willful.

39.     Ubee fully performed its contractual obligations under the Other Vendors LOU, except insofar as these obligations have been waived by Charter or excused by Charter's failure to perform under the Other Vendors LOU.

40.     As a direct, proximate, and foreseeable result of the conduct and omissions alleged above, Ubee has suffered damages in an amount to be determined at trial, including, at a minimum, approximately $328,641.60 in amounts that Charter owes to Ubee as a result of Charter's failure to make payments in breach of the terms of the Other Vendors LOU.

## COUNT III – UNJUST ENRICHMENT

## (MICROCHIP VENDOR SURCHARGE AND MICROCHIP VENDOR PRICE INCREASE)

41.     Ubee incorporates by reference the allegations in Paragraphs 1–40.

42.     Ubee paid $11,055,061.54 in Microchip Vendor Surcharges and Microchip Vendor Price Increases for Microchip Vendor microchips used in Ubee's production of cable modems for Charter, and which cable modems were shipped to, and accepted by, Charter for the first half of 2023.

43.     By making these payments and shipments, Ubee conferred substantial benefits on Charter.

44.     Charter never reimbursed Ubee for the $11,055,061.54 in Microchip Vendor Surcharges and Microchip Vendor Price Increases.

45.     Charter has been unjustly enriched by Ubee's payment of these Microchip Vendor Surcharges and Microchip Vendor Price Increases.

46.     Charter's unjust enrichment came at the expense of Ubee.

47.     It would be unjust if Ubee were not reimbursed by Charter for the payments that Ubee made for Microchip Vendor Surcharges and Microchip Vendor Price Increases.

48.     Charter's misconduct directly and proximately caused Ubee to suffer damages.

49.     Ubee pleads Unjust Enrichment in the alternative to Count I (Breach of Implied-in-Fact Contract) in the event that the trier of fact does not find an enforceable contract with respect to the subject matter alleged in Count I.

## COUNT IV – UNJUST ENRICHMENT

## (OTHER VENDORS SURCHARGE)

50.     Ubee incorporates by reference the allegations in Paragraphs 1–49.

51.    Ubee paid $328,641.60 in Other Vendors Surcharges for Other Vendors' components used in Ubee's production of cable modems for Charter, which cable modems were delivered to, and accepted by, Charter in 2023.

52.    By making these payments and shipments, Ubee conferred substantial benefits on Charter.

53.    Charter never reimbursed Ubee for the $328,641.60 in Other Vendors Surcharges.

54.    Charter has been unjustly enriched by Ubee's payment of these Other Vendors Surcharges.

55.    Charter's unjust enrichment came at the expense of Ubee.

56.    It would be unjust if Ubee were not reimbursed by Charter for the payments that Ubee made to Other Vendors for Other Vendors Surcharges.

57.    Charter's misconduct directly and proximately caused Ubee to suffer damages.

58.    Ubee pleads Unjust Enrichment in the alternative to Count II (Breach of Express Contract) in the event that the trier of fact does not find an enforceable contract with respect to the subject matter alleged in Count II.

**PRAYER FOR RELIEF**

59.    WHEREFORE, Ubee prays for judgment on its Counterclaims and:

a.    The award of money damages, including compensatory, consequential, and incidental damages;

b.    All costs of this action, including reasonable attorneys' fees; and

c.    All further and additional relief that the Court deems just and appropriate.

**<u>JURY DEMAND</u>**

Ubee demands a jury trial on all issues so triable.

Dated: May 16, 2024                    Respectfully submitted,

                              By:/s/ *Kyle P. Seelbach*
                                  Kyle P. Seelbach, #60382
                                  HUSCH BLACKWELL LLP
                                  8001 Forsyth Boulevard, Suite 1500
                                  St. Louis, Missouri 63105
                                  Phone: (314) 480-1500
                                  Fax: (314) 480-1551
                                  kyle.seelbach@huschblackwell.com

                                  and

                                  Michael T. Raupp, #65121
                                  HUSCH BLACKWELL LLP
                                  4801 Main Street, Suite 1000
                                  Kansas City, Missouri 64112
                                  Phone: (816) 983-8000
                                  Fax: (816) 983-8080
                                  michael.raupp@huschblackwell.com

                                  and

                                  Paul J. Loh, *admitted pro hac vice*
                                  Michelle Millard, *admitted pro hac vice*
                                  Kirby Hsu, *admitted pro hac vice*
                                  Ashley Kirk, *admitted pro hac vice*
                                  Amelia L.B. Sargent, *admitted pro hac vice*
                                  Willenken LLP
                                  707 Wilshire Blvd., Suite 3850
                                  Los Angeles, CA 9007
                                  Phone: (213) 955-9240
                                  Fax: (213) 955-9250
                                  ploh@willenken.com
                                  mmillard@willenken.com
                                  khsu@willenken.com
                                  akirk@willenken.com
                                  asargent@willenken.com

                                  ***Attorneys for Defendant/Counterclaim Defendant Ubee Interactive Inc.***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing was electronically served upon all counsel of record through the Court's e-filing system this 16th day of May, 2024.

*/s/ Kyle P. Seelbach*