**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

CHARTER COMMUNICATIONS, INC., CHARTER COMMUNICATIONS OPERATING, LLC, and CHARTER DISTRIBUTION, LLC,

                Plaintiffs/Counterclaim Defendants,

v.

UBEE INTERACTIVE, INC.,

                Defendant/Counterclaim Plaintiff.

Case No. 4:24-cv-00199-CDP

## CHARTER COMMUNICATIONS OPERATING, LLC AND CHARTER DISTRIBUTION, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO UBEE INTERACTIVE INC.'S COUNTERCLAIMS

Plaintiff/Counterclaim Defendant Charter Communications Operating, LLC ("CCO") and Counterclaim Defendant Charter Distribution LLC (collectively, "Charter") respectfully submit their Answer and Affirmative Defenses to Defendant/Counterclaim Plaintiff Ubee Interactive Inc.'s ("Ubee") counterclaims ("Counterclaims").

### THE PARTIES

1.      Ubee Interactive Inc. is a California corporation with its principal place of business in Colorado.

**Answer:**  Charter admits that Ubee Interactive Inc. is a California corporation with its principal place of business in Colorado.  Except as expressly admitted, Charter denies the allegations in paragraph 1 of the Counterclaims.

2.      Upon information and belief, Charter Communications Operating, LLC is a Delaware limited liability company with its principal place of business in Missouri.

1

**Answer:**  Charter admits that Charter Communications Operating, LLC is a Delaware limited liability company with its principal place of business in Missouri.  Except as expressly admitted, Charter denies the allegations in paragraph 2 of the Counterclaims.

3.    Upon information and belief, Charter Distribution LLC is a Delaware limited liability company with its principal place of business in Missouri.

**Answer:**  Charter admits that Charter Distribution, LLC is a Delaware limited liability company with its principal place of business in Missouri.  Except as expressly admitted, Charter denies the allegations in paragraph 3 of the Counterclaims.

## JURISDICTION

4.    The Court has jurisdiction over Ubee's counterclaims pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest.  The Court also has jurisdiction over Ubee's counterclaims pursuant to 28 U.S.C. § 1367(a) and in accordance with Fed. R. Civ. P. 13(b).  Ubee will separately move to add CD as a Counterclaim Defendant pursuant to Fed R. Civ. P. 13(h), 19 and 20.

**Answer:**  Paragraph 4 of the Counterclaims calls for a legal conclusion to which no response is required.

## FACTUAL BACKGROUND

5.    Counterclaim Plaintiff Ubee supplies modems and gateways for telecommunications companies.  Ubee manufactures these products according to its customers' specifications so that they are operable on customers' communications networks.

**Answer:**  Charter admits that it purchases cable modems from Ubee.  Charter is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 5 of the Counterclaims and, therefore, denies them.

2

6.      On information and belief, Counterclaim Defendant CCO is an affiliate of cable provider Charter Communications, Inc. CCO executed the agreements at issue in these counterclaims.  On information and belief, Counterclaim Defendant CD is an affiliate of CCO and the entity through which CCO issues purchase orders and pays invoices for purposes relevant to these counterclaims (CCO and CD together hereinafter called "Charter").

**Answer:**  The first sentence of paragraph 6 of the Counterclaims calls for a legal conclusion to which no response is required.   To the extent a response is required, Charter denies the allegations in the first sentence of paragraph 6.  Charter admits that Charter Communications Inc. signed the agreements at issue in the Counterclaims for CCO.  The third sentence of paragraph 6 of the Counterclaims calls for a legal conclusion to which no response is required.  To the extent a response is required, Charter denies the allegations in the third sentence of paragraph 6.

7.      Charter is a longtime customer of Ubee. Ubee manufactures cable modems for Charter pursuant to Charter's product specifications.  Under Ubee and Charter's general practice, the parties agree upon a price for the cable modems.   This price includes the costs for all components of the modems, which Ubee procures and pays for directly from various vendors. The agreed modem price is coded into Charter's purchase order ("PO") system.  Charter issues POs for the purchase of modems from Ubee.  Ubee, in turn, orders the necessary components and issues invoices to Charter for the cable modem POs, and Charter remits payment to Ubee on these invoices.

**Answer:**  Charter admits that it:  is a customer of Ubee; purchases cable modems from Ubee; and issues purchase orders for the purchase of cable modems from Ubee.  Except as expressly admitted, Charter denies the allegations in paragraph 7 of the Counterclaims.

**Microchip Vendor's Component Costs**

3

8.      A necessary component within the Charter cable modems manufactured by Ubee is a specialized microchip set supplied by a vendor referred to herein as "Microchip Vendor."  To Ubee's understanding, these are the only microchips on the market that meet the product specifications provided by Charter for the modems.

**Answer:**  Charter is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Counterclaims and therefore denies them.

9.      The purchase price for these microchips is negotiated between Charter and Microchip Vendor.  Ubee then purchases the microchips through Microchip Vendor's authorized dealer based upon the price negotiated between Charter and Microchip Vendor.

**Answer:**   Charter denies the allegations in paragraph 9 of the Counterclaims.

The Microchip Vendor Surcharge

10.      Beginning in March 2021, Microchip Vendor began to experience COVID-related supply-chain issues. Due to these supply constraints, Microchip Vendor informed Ubee and Charter that it would be applying a temporary surcharge to orders to ensure timely delivery of products.  Ubee is informed and believes that Microchip Vendor and Charter negotiated the terms of this temporary surcharge, and reached an agreement that the microchips would be subject to a per unit surcharge at an agreed amount (the "Microchip Vendor Surcharge").  On information and belief, Ubee alleges that the term of the Microchip Vendor-Charter agreement regarding the Microchip Vendor Surcharge does not expire until the end of 2024.

**Answer:**  Charter admits that Charter and Microchip Vendor entered into an agreement where microchips used in cable modems would be subject to a surcharge.  Charter admits that this agreement expires on December 31, 2024.  Except as expressly admitted, Charter denies the allegations in paragraph 10 of the Counterclaims.

11.    Like the cost of the Microchip Vendor microchips, the Microchip Vendor Surcharge was to be paid directly by Ubee to Microchip Vendor.  Charter agreed to reimburse Ubee for the Microchip Vendor Surcharge.  Under its PO system, Charter is unable to make any adjustments to product prices except to reflect a permanent price change.  As a result, Charter could not adjust the modem price to include the Microchip Vendor Surcharge.  Instead, Ubee and Charter agreed that the Microchip Vendor Surcharge would be processed and paid for under separate POs and invoices (i.e., not together with the purchase of the modems).

**Answer:**  Charter admits that CCO and Ubee entered into a Letter of Understanding (the "Microchip Vendor LOU"), effective February 7, 2022, with respect to CCO and Ubee's agreement regarding the payment of surcharges to Ubee and Ubee's guarantee of product(s) to CCO.  Except as expressly admitted, Charter denies the allegations in paragraph 11 of the Counterclaims.

12.    This arrangement was memorialized in a Letter of Understanding dated February 7, 2022 between Charter and Ubee (the "Microchip Vendor LOU").  In the Microchip Vendor LOU, Charter and Ubee agreed that Ubee would continue to purchase the Microchip Vendor microchips and that Charter would reimburse Ubee for the Microchip Vendor Surcharge for products shipped during the period between March 1 and December 31, 2022. The Microchip Vendor LOU provides that Ubee would separately invoice the Microchip Vendor Surcharges to Charter for payment.

**Answer:**  Charter admits that CCO and Ubee entered into a Letter of Understanding (the "Microchip Vendor LOU"), effective February 7, 2022, with respect to CCO and Ubee's agreement regarding the payment of surcharges to Ubee and Ubee's guarantee of product(s) to CCO.  To the extent the allegations in this paragraph purport to summarize or characterize the

5

Microchip Vendor LOU, the Microchip Vendor LOU speaks for itself, and Charter denies any characterization of the Microchip Vendor LOU inconsistent with its content. Except as expressly admitted, Charter denies the allegations in paragraph 12 of the Counterclaims to the extent they do not reflect the exact language of the Microchip Vendor LOU.

13.    In accordance with the parties' understanding set forth in the Microchip Vendor LOU, Ubee issued seven (7) invoices to Charter for the Microchip Vendor Surcharges paid by Ubee for cable modems it shipped to Charter during the applicable time period (viz., 3/1/2022-12/31/2022), and Charter remitted payments to Ubee for same.

**Answer:**  Charter admits that it paid invoices Ubee issued for Microchip Vendor imposed surcharges for microchips in cable modems Ubee shipped to Charter in 2022. Except as expressly admitted, Charter denies the allegations in paragraph 13 of the Counterclaims.

The Microchip Vendor Price Increase

14.    Although the Microchip Vendor LOU did not expressly reference cable modems that Ubee shipped to Charter after December 31, 2022, for the modems that Ubee shipped to Charter starting in 2023, Microchip Vendor continued to assess the Microchip Vendor Surcharge on microchips purchased by Ubee. In addition, Microchip Vendor informed Ubee that it would also be implementing a per unit price increase (on top of the Microchip Vendor Surcharge) for all microchips it sold to Ubee, starting in 2023 (the "Microchip Vendor Price Increase").

**Answer:**  Charter incorporates its response to paragraph 12 of the Counterclaims. Charter is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 14 of the Counterclaims and therefore denies them.

15.    As a result, in early 2023, Ubee contacted Charter to enter into an extension and amendment of the Microchip Vendor LOU to address both the continued reimbursement of the

Microchip Vendor Surcharge, plus the new Microchip Vendor Price Increase for the Microchip Vendor microchips, for cable modems Ubee shipped to Charter starting in 2023. However, Charter claimed that it was not yet ready to execute such an extension and amendment of the Microchip Vendor LOU, because Charter was purportedly still negotiating with Microchip Vendor over the specific amount of the Microchip Vendor Price Increase, so the parties (i.e., Charter and Microchip Vendor) supposedly had yet to agree upon a firm, new price for the Microchip Vendor microchips.

**Answer:** Charter admits that Ubee contacted Charter in early 2023 to enter into an extension and amendment of the Microchip Vendor LOU for cable modems Ubee shipped to Charter starting in 2023. Charter admits that Microchip Vendor imposed contractual and non-contractual surcharges on the Microchip Vendor's microchips in 2023. Except as expressly admitted, Charter denies the allegations in paragraph 15 of the Counterclaims.

16.    Because Charter claimed it had not reached an agreement with Microchip Vendor as to the final cost of the Microchip Vendor Price Increase, Ubee was not able to obtain an extension and amendment of the Microchip Vendor LOU.

**Answer:** Charter denies the allegations in paragraph 16 of the Counterclaims.

17.    In order to timely fulfill Charter's ongoing POs for cable modems, for 2023, Ubee paid all of the Microchip Vendor Surcharges (for the first half of 2023) and Microchip Vendor Price Increases in advance, on the understanding that they would later be reimbursed by Charter. Notably, Charter accepted delivery of all the cable modems Ubee shipped starting in 2023, and, on information and belief, deployed said Ubee cable modems to Charter's customers.

**Answer:** Charter admits that it accepted delivery of the cable modems Ubee shipped starting in 2023 and deployed certain of the delivered cable modems to its customers. Except as expressly admitted, Charter denies the allegations in paragraph 17 of the Counterclaims.

18.    Charter was aware that, starting in 2023, Ubee had begun paying in advance the additional Microchip Vendor Price Increase, and that Ubee was continuing to pay the Microchip Vendor Surcharge.  Moreover, Charter knew that Microchip Vendor required Ubee to make full payment (inclusive of the Microchip Vendor Price Increase and, for the first half of 2023, the Microchip Vendor Surcharge) before Microchip Vendor would authorize delivery of microchips to Ubee for the manufacture of the Charter modems. Charter continued to issue Ubee POs for cable modems throughout 2023 that required the Microchip Vendor microchips, with the expectation that these modems be timely delivered, and well knowing that this would require Ubee to front the cost of the Microchip Vendor Surcharge (in the first half of 2023) and Microchip Vendor Price Increase.

**Answer:**  Charter admits that it issued purchase orders to Ubee for cable modems in 2023. Except as expressly admitted, Charter denies the allegations in paragraph 18 of the Counterclaims

19.    Charter and Ubee both understood that Charter was obligated to reimburse Ubee for all the Microchip Vendor Surcharges and Microchip Vendor Price Increases that Ubee had paid in order to continue to manufacture and deliver modems to Charter in 2023.

**Answer:**  Charter denies the allegations in paragraph 19 of the Counterclaims them.

20.    Near the end of 2023, Charter claimed that it still had not reached an agreement with Microchip Vendor regarding the final cost of the Microchip Vendor Price Increase.  Ubee proceeded to issue five (5) invoices to Charter reflecting all Microchip Vendor Surcharges and Microchip Vendor Price Increases paid in advance by Ubee for all cable modems it shipped to Charter in 2023.  These invoices together amounted to $11,055,061.54—comprised of $2,359,624.96 for the Microchip Vendor Price Increase, and $8,695,436.58 for the Microchip

Vendor Surcharge.  To date, Charter has failed and refused to make any payment towards this outstanding amount.  Charter has never disputed any of these invoices.

**Answer:**  Charter admits that Ubee issued invoices to Charter in 2023 for contractual and non-contractual surcharges imposed by Microchip Vendor for microchips in cable modems Ubee shipped to Charter and that as Ubee is aware Charter is in the process of reconciling the amounts sought by Ubee based on documentation recently provided by Ubee.  Charter admits that Ubee is aware that Charter has not paid the amounts sought by Ubee because of ongoing disputes with Ubee including a right of offset.  Except as expressly admitted, Charter denies the allegations in paragraph 20 of the Counterclaims.

### Other Vendors' Components Costs

21.    In addition to the Microchip Vendor microchips, COVID-related supply issues also impacted other vendors' components that Ubee needed to build cable modems for Charter. Examples of these components include: DDR3 memory, flash memory, freight, packing materials, printed circuit boards, circuit board housing, soldering paste, power supply units, and additional microchips.

**Answer:**  Charter is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Counterclaims and therefore denies them.

22.    Like the Microchip Vendor, certain vendors of these other components began to apply surcharges to ensure the timely delivery of products amid supply constraints.  And as with the Microchip Vendor Surcharge, Charter and Ubee entered into Letters of Understanding to address these other surcharges—Ubee would pay the surcharges directly to the vendors, and later invoice and be reimbursed by Charter. Such other vendors—separate and apart from the Microchip

Vendor—with respect to whom Charter and Ubee entered into Letters of Understanding pertaining to their surcharges, shall be referred to herein as "Other Vendors".

**Answer:**   Charter admits that CCO and Ubee entered into a Letter of Understanding ("Other Vendors LOU"), effective August 31, 2023, with respect to CCO and Ubee's agreement regarding the payment of surcharges to Ubee and Ubee's guarantee of product(s) to CCO.  Except as expressly admitted, Charter denies the allegations in paragraph 22 of the Counterclaims.

23.     On August 31, 2023, Ubee and CCO executed a Letter of Understanding ("Other Vendors LOU") setting forth the terms by which CCO would reimburse Ubee for surcharges on Other Vendors' components for cable modems that Ubee shipped to Charter during the period between January 1 and December 31, 2023 (the "Other Vendors Surcharge").

**Answer:**   Charter admits that CCO and Ubee entered into a Letter of Understanding ("Other Vendors LOU"), effective August 31, 2023, with respect to CCO and Ubee's agreement regarding the payment of surcharges to Ubee and Ubee's guarantee of product(s) to CCO.  Except as expressly admitted, Charter denies the allegations in paragraph 23 of the Counterclaims.

24.     Between October 19 and December 21, 2023, Ubee issued five (5) invoices for Other Vendors Surcharges pursuant to Charter-issued POs and under the Other Vendors LOU. Charter paid each of these five invoices in full.

**Answer:**  Charter admits that it paid invoices from Ubee for Other Vendors Surcharges in 2023 pursuant to purchase orders Charter issued to Ubee.  Except as expressly admitted, Charter denies the allegations in paragraph 24 of the Counterclaims.

25.     In January 2024, Ubee sent a sixth invoice to Charter under the Other Vendors LOU for Other Vendors Surcharges in the amount of $328,641.60, which pertained to cable modems that Ubee shipped to Charter during the period beginning July 1, 2023 and ending December 31,

2023. To date, Charter has failed and refused to pay any portion of this amount owed for the Other Vendors Surcharges.

**Answer:** Charter admits it received an invoice for the Other Vendors Surcharges in the amount of $328,641.60 and that it has not paid this amount to date because of its ongoing disputes with Ubee including a right of offset. Except as expressly admitted, Charter denies the allegations in paragraph 25 of the Counterclaims.

## COUNT I – BREACH OF IMPLIED-IN-FACT CONTRACT

### (MICROCHIP VENDOR SURCHARGE AND MICROCHIP VENDOR PRICE INCREASE)

26.     Ubee incorporates by reference the allegations in Paragraphs 1–25.

**Answer:** Charter incorporates by reference its answers to paragraphs 1–25 as if set forth fully herein as and for its answers to this paragraph.

27.     With Charter's knowledge and at Charter's request, Ubee paid, in advance, Microchip Vendor Surcharges and Microchip Vendor Price Increases for cable modems manufactured for Charter and shipped in 2023, with the expectation, which was fully and clearly understood by Charter, that Ubee would be reimbursed by Charter for these payments.

**Answer:** Charter denies the allegations in paragraph 27 of the Counterclaims.

28.     By engaging in the course of conduct described above, Ubee and Charter intended to enter into, and did enter into, a valid and enforceable implied-in-fact contract whereby Charter would reimburse Ubee for the Microchip Vendor Surcharges and Microchip Vendor Price Increases advanced by Ubee for cable modems Ubee shipped to Charter during 2023, upon receipt of Ubee's invoices for these amounts (the "Implied Agreement").

**Answer:** Charter denies the allegations in paragraph 28 of the Counterclaims.

11

29.     Pursuant to the terms of the Implied Agreement, Ubee was permitted to invoice Charter for Microchip Vendor Surcharges and Microchip Vendor Price Increases that Ubee paid in advance to Microchip Vendor for cable modems that Ubee shipped to Charter in 2023, and Charter was obligated to pay all such invoices.

**Answer:**  Charter denies the allegations in paragraph 29 of the Counterclaims.

30.     Charter failed to meet its obligations under the terms of the Implied Agreement by refusing to pay invoices issued by Ubee for Microchip Vendor Surcharges and Microchip Vendor Price Increases that Ubee paid in advance for cable modems that it shipped to Charter, and which Charter received and accepted, during 2023. The total amount that Charter has refused to pay is $11,055,061.54.

**Answer:**  Charter denies the allegations in paragraph 30 of the Counterclaims.

31.      Based on the foregoing conduct and omissions, Charter has materially breached the terms of the Implied Agreement. Charter's breaches were knowing and willful.

**Answer:**  Charter denies the allegations in paragraph 31 of the Counterclaims.

32.     Ubee fully performed its contractual obligations under the Implied Agreement, except insofar as these obligations have been waived by Charter or excused by Charter's failure to perform under the Implied Agreement.

**Answer:**  Charter denies the allegations in paragraph 32 of the Counterclaims.

33.     As a direct, proximate, and foreseeable result of the conduct and omissions alleged above, Ubee has suffered damages in an amount to be determined at trial, including, at a minimum, approximately $11,055,061.54 in amounts that Charter owes to Ubee as a result of Charter's failure to make payments in breach of the terms of the Implied Agreement.

**Answer:**  Charter denies the allegations in paragraph 33 of the Counterclaims.

## COUNT II – BREACH OF EXPRESS CONTRACT

## (OTHER VENDORS SURCHARGE)

34.     Ubee incorporates by reference the allegations in Paragraphs 1–33.

**Answer:**  Charter incorporates by reference its answers to paragraphs 1–33 as if set forth fully herein as and for its answers to this paragraph.

35.     Ubee entered into a valid and binding written agreement with Charter—namely, the Other Vendors LOU—pursuant to which Charter was to reimburse Ubee for Other Vendors Surcharges that Ubee paid in advance to manufacture cable modems for Charter, and which were shipped to Charter in 2023.

**Answer:**  Charter admits that it entered into the Other Vendors LOU.  To the extent the allegations in this paragraph purport to describe the terms of the Other Vendors LOU, the Other Vendors LOU speaks for itself, and Charter denies any characterization of the Other Vendors LOU inconsistent with its terms.  Except as expressly admitted, Charter denies the allegations in paragraph 35 of the Counterclaims.

36.     Pursuant to the terms of the Other Vendors LOU, Ubee was permitted to invoice Charter for Other Vendors Surcharges, and Charter would pay such invoices within 60 days of receipt.

**Answer:**  To the extent the allegations in this paragraph purport to describe the terms of the Other Vendors LOU, the Other Vendors LOU speaks for itself, and Charter denies any characterization of the Other Vendors LOU inconsistent with its terms. Except as specifically admitted, to the extent any response is required, Charter denies the allegations in paragraph 36 of the Counterclaims.

37.     Charter failed to meet its obligations under the terms of the Other Vendors LOU by refusing to pay an invoice issued by Ubee for Other Vendors Surcharges pertaining to cable modems that Ubee shipped to Charter during the period beginning July 1, 2023 and ending December 31, 2023.  The total amount that Charter has refused to pay is $328,641.60.

**Answer:**  Charter admits it has not paid this amount to date because of its ongoing disputes with Ubee including a right of offset.  Except as expressly admitted, Charter denies the allegations in paragraph 37 of the Counterclaims.

38.     Based on the foregoing conduct and omissions, Charter has materially breached the terms of the Other Vendors LOU. Charter's breaches were knowing and willful.

**Answer:**  Charter denies the allegations in paragraph 38 of the Counterclaims.

39.     Ubee fully performed its contractual obligations under the Other Vendors LOU, except insofar as these obligations have been waived by Charter or excused by Charter's failure to perform under the Other Vendors LOU.

**Answer:**  Charter denies the allegations in paragraph 39 of the Counterclaims.

40.     As a direct, proximate, and foreseeable result of the conduct and omissions alleged above, Ubee has suffered damages in an amount to be determined at trial, including, at a minimum, approximately $328,641.60 in amounts that Charter owes to Ubee as a result of Charter's failure to make payments in breach of the terms of the Other Vendors LOU.

**Answer:**  Charter denies the allegations in paragraph 40 of the Counterclaims.

### COUNT III – UNJUST ENRICHMENT

### (MICROCHIP VENDOR SURCHARGE AND MICROCHIP VENDOR PRICE INCREASE)

41.     Ubee incorporates by reference the allegations in Paragraphs 1–40.

**Answer:**  Charter incorporates by reference its answers to paragraphs 1–40 as if set forth fully herein as and for its answers to this paragraph.

42.    Ubee paid $11,055,061.54 in Microchip Vendor Surcharges and Microchip Vendor Price Increases for Microchip Vendor microchips used in Ubee's production of cable modems for Charter, and which cable modems were shipped to, and accepted by, Charter for the first half of 2023.

**Answer:**  Charter is aware that Ubee paid both contractual and non-contractual surcharges to Microchip Vendor and that as Ubee is aware Charter is in the process of reconciling the amounts sought by Ubee based on documentation recently provided by Ubee.  Charter admits that Ubee is aware that Charter has not paid the amounts sought by Ubee because of ongoing disputes with Ubee including a right of offset.  Charter is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 42 of the Counterclaims and therefore denies them.

43.    By making these payments and shipments, Ubee conferred substantial benefits on Charter.

**Answer:**  Charter denies the allegations in paragraph 43 of the Counterclaims.

44.    Charter never reimbursed Ubee for the $11,055,061.54 in Microchip Vendor Surcharges and Microchip Vendor Price Increases.

**Answer:**  Charter admits that Ubee is aware that Charter is in the process of reconciling the amounts sought by Ubee based on documentation recently provided by Ubee.  Charter admits that Ubee is aware that Charter has not paid the amounts sought by Ubee because of ongoing disputes with Ubee including a right of offset.  Charter is without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in paragraph 44 of the Counterclaims and therefore denies them.

45.      Charter has been unjustly enriched by Ubee's payment of these Microchip Vendor Surcharges and Microchip Vendor Price Increases.

**Answer:**  Charter denies the allegations in paragraph 45 of the Counterclaims.

46.      Charter's unjust enrichment came at the expense of Ubee.

**Answer:**  Charter denies the allegations in paragraph 46 of the Counterclaims.

47.      It would be unjust if Ubee were not reimbursed by Charter for the payments that Ubee made for Microchip Vendor Surcharges and Microchip Vendor Price Increases.

**Answer:**  Charter denies the allegations in paragraph 47 of the Counterclaims.

48.      Charter's misconduct directly and proximately caused Ubee to suffer damages.

**Answer:**  Charter denies the allegations in paragraph 48 of the Counterclaims.

49.      Ubee pleads Unjust Enrichment in the alternative to Count I (Breach of Implied-in-Fact Contract) in the event that the trier of fact does not find an enforceable contract with respect to the subject matter alleged in Count I.

**Answer:**  To the extent any response is required, Charter denies the allegations in paragraph 49 of the Counterclaims.

**COUNT IV – UNJUST ENRICHMENT**

**(OTHER VENDORS SURCHARGE)**

50.      Ubee incorporates by reference the allegations in Paragraphs 1–49.

**Answer:**  Charter incorporates by reference its answers to paragraphs 1–49 as if set forth fully herein as and for its answers to this paragraph.

16

51.     Ubee paid $328,641.60 in Other Vendors Surcharges for Other Vendors' components used in Ubee's production of cable modems for Charter, which cable modems were delivered to, and accepted by, Charter in 2023.

**Answer:**   Charter is aware that Ubee has invoiced Charter for the above-referenced amount.  Charter is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 51 of the Counterclaims and therefore denies them.

52.     By making these payments and shipments, Ubee conferred substantial benefits on Charter.

**Answer:**  Charter denies the allegations in paragraph 52 of the Counterclaims.

53.     Charter never reimbursed Ubee for the $328,641.60 in Other Vendors Surcharges.

**Answer:**  Charter admits it has not paid this amount to date because of its ongoing disputes with Ubee including a right of offset.  Except as expressly admitted, Charter denies the allegations in paragraph 53 of the Counterclaims.

54.     Charter has been unjustly enriched by Ubee's payment of these Other Vendors Surcharges.

**Answer:**  Charter denies the allegations in paragraph 54 of the Counterclaims.

55.     Charter's unjust enrichment came at the expense of Ubee.

**Answer:**  Charter denies the allegations in paragraph 55 of the Counterclaims.

56.     It would be unjust if Ubee were not reimbursed by Charter for the payments that Ubee made to Other Vendors for Other Vendors Surcharges.

**Answer:**  Charter denies the allegations in paragraph 56 of the Counterclaims.

57.     Charter's misconduct directly and proximately caused Ubee to suffer damages.

**Answer:**  Charter denies the allegations in paragraph 57 of the Counterclaims.

58.    Ubee pleads Unjust Enrichment in the alternative to Count II (Breach of Express Contract) in the event that the trier of fact does not find an enforceable contract with respect to the subject matter alleged in Count II.

**Answer:**   To the extent any response is required, Charter denies the allegations in paragraph 58 of the Counterclaims.

## PRAYER FOR RELIEF

59.    WHEREFORE, Ubee prays for judgment on its Counterclaims and:

   a. The award of money damages, including compensatory, consequential, and incidental damages;

   b. All costs of this action, including reasonable attorneys' fees; and

   c. All further and additional relief that the Court deems just and appropriate.

**Answer:**  Charter denies that Ubee is entitled to any of the requested relief and denies any and all allegations contained within the Prayer for Relief of the Counterclaims.

## JURY DEMAND

Ubee demands a jury trial on all issues so triable.

**Answer:**  Charter denies that Ubee is entitled to a jury trial.

## AFFIRMATIVE DEFENSES

Subject to the responses above, Charter contends and asserts the following affirmative and other defenses in response to the allegations in the Counterclaims.  By asserting these affirmative defenses, Charter does not admit that it bears the burden of proof on any issue and does not accept any burden it would not otherwise bear.  In addition to the affirmative and other defenses described below, and subject to the responses above, Charter intends to conduct discovery and specifically reserves all rights to assert additional affirmative and other defenses consistent with the facts that become known through the course of discovery or otherwise.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

With respect to one or more of the purported claims for relief alleged in the Counterclaims, Ubee fails to allege facts sufficient to state a claim against Charter upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Offset)

Ubee's claims are barred, in whole or in part, because Ubee owes monies to Charter, and Charter has the right to recoupment of the amount owed, and any purported damages recoverable by Ubee must be reduced against this amount.

Dated: St. Louis, Missouri                      Respectfully submitted,
     July 15, 2024

                                   */s/ Eric Hogrefe*
                                  Roman P. Wuller, #36115 MO
                                  John S. Kingston, #51403 MO
                                  Sharon B. Rosenberg, #54598 MO
                                  Eric Hogrefe, #74703 MO
                                  THOMPSON COBURN LLP
                                  One U.S. Bank Plaza
                                  505 N. 7th Street
                                  St. Louis, MO.  63101
                                  Telephone: (314) 552-6000
                                  Fax: (314) 552-7000
                                  rwuller@thompsoncoburn.com
                                  jkingston@thompsoncoburn.com
                                  srosenberg@thompsoncoburn.com
                                  ehogrefe@thompsoncoburn.com

                                  Daniel Reisner (pro hac vice)
                                  Michael A. Lynn (pro hac vice)
                                  Elizabeth A. Long (pro hac vice)
                                  ARNOLD & PORTER KAYE SCHOLER LLP
                                  250 West 55th Street
                                  New York, New York 10019-9710
                                  Telephone:  (212) 836-8000
                                  Fax:  (212) 836-8689
                                  daniel.reisner@arnoldporter.com
                                  michael.lynn@arnoldporter.com
                                  elizabeth.long@arnoldporter.com

                                  *Attorneys for Plaintiff Charter*
                                  *Communications, Inc., Plaintiff/Counterclaim*
                                  *Defendant Charter Communications Operating,*
                                  *LLC, and Counterclaim Defendant Charter*
                                  *Distribution LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was electronically served upon all counsel of record through the Court's e-filing system this 15th day of July, 2024.

/s/ *Eric Hogrefe*