UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHARTER COMMUNICATIONS, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:24 CV 199 CDP |
| UBEE INTERACTIVE, INC., | ) ) ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

In this case plaintiff Charter Communications, Inc., seeks indemnification from defendant Ubee Interactive, Inc., for defense costs, including attorneys' fees and amounts paid in settlement, of suits brought against Charter in Texas. The Texas suits alleged that Charter was infringing patents held by Entropic Communications, LLC. Entropic's allegations of patent infringement related, in part, to functions performed by cable modems that Ubee had provided to Charter. In this suit Charter seeks to recover a portion of its defense costs from Ubee pursuant to an indemnification agreement contained in a "Master Purchase Agreement" between Charter and Ubee. The Texas suits also involved parts supplied to Charter through several vendors other than Ubee, who had similar Master Purchase Agreements.

Before me now is Ubee's motion to compel production of documents, which seeks documents containing communications between Charter and its counsel in the Texas cases and information and documents created by Charter's attorneys in the those cases.  ECF 50.  For the reasons that follow, I will grant the motion to compel in large part, but will deny it to the extent it seeks documents related to Charter's vendors other than Ubee.

Charter has placed the reasonableness of its and its lawyers' actions and communications directly in issue in this case.  According to Charter's complaint, during the litigation Charter and Ubee reached an agreement regarding payment.  ECF 28, ¶ 7.  Ubee asserts that it agreed to pay a portion of an attorneys' "fixed fee," but the actual fees were millions of dollars more than that fixed fee.  Ubee says Charter explained that the fixed fee had been based on assumptions that later turned out to be incorrect.  But Ubee alleges that Charter and its attorneys made no attempt to adhere to those assumptions, but instead badly mismanaged the litigation.  It appears that all of these claims and the others related to the conduct of the litigation are hotly disputed.  Ubee contends that in order to contest the reasonableness of the fees and the settlement, it needs discovery, including privileged communications and work product involving Ubee and its counsel.  Ubee also argues that Charter waived its privileges by making a presentation to it

2

about the patent litigation while the litigation was ongoing using privileged materials.[1]

## Background Facts

On July 31, 2024, Ubee served 110 requests for production of documents (RFPs) on Charter. ECF 51. Ubee's RFPs 15–19, 33-38, 43-44, 46–47, 72, and 83–94 seek to compel all documents related to (1) "any investigations of the claims" in the underlying patent cases, (2) the "litigation risk associated" with those lawsuits, including "any estimate of potential damages Entropic might recover in any of the [Entropic lawsuits]," (3) Charter's "defense strategy" in the patent litigation, (4) Charter's "non-infringement analysis and defense" in the patent litigation, (5) Charter's "invalidity analysis and defense" in the patent litigation and (6) documents related to Charter's decision "whether to seek indemnification" from the other vendors. *Id.*

On September 19, 2024, Charter responded, objecting to each and every RFP with, at a minimum, a blanket assertion that the request was overly broad, unduly burdensome, and sought information that was not relevant to the claims at issue here. As for the RFPs which are the subject of the instant motion to compel,

---

[1] The presentation appears in the record as 54-4. Charter responds that disclosure did not waive its privilege because it was protected by the common interest doctrine.

3

Charter also objected to these RFPs as improper because they "target[] and seek[] information protected by the attorney-client privilege, work product doctrine, or any other applicable law, privilege, protection, or doctrine." ECF 41.  Subject to its objections, in response to Ubee's RFPs which seek documents related to the defense costs for the patent litigation, Charter produced invoices and fee-related statements for the defense of those cases.[2]

Charter also produced the settlement agreement, the demand letters for defense and indemnification to the other vendors whose products were also at issue in the infringement cases, and the pleadings and hearings, written discovery, invalidity contentions, infringement contentions, subpoenas, deposition transcripts, expert reports, trial exhibits, and the documents produced by Charter and third parties in the patent cases.  Charter also agreed to produce its communications with Entropic concerning settlement.  Charter represents that its production will amount to over 93,000 documents.[3]

---

[2] In its reply brief, Ubee states that Charter produced only *redacted* invoices.  ECF 67, p.5 at ftnt. 2.  If that is the case, Charter's arguments that Ubee can determine what it needs from the invoices already produced is misleading at best.  In any event, Charter must produce complete unredacted invoices, if it has not already done so.

[3] No documents or privilege logs have been submitted to the Court in connection with the pending motion to compel.  It is unclear whether Charter has prepared and provided a privilege log and/or otherwise complied with the requirements of Fed. R. Civ. P. 26(b)(5) in response to Ubee's RFPs.

Despite the amount of discovery produced by Charter, Ubee argues that it is entitled to more documents because they all bear on whether the liabilities were "reasonably incurred" and that Charter has waived the attorney-client privilege and work product protections with respect to those document categories.  These categories are: (1) documents related to counsel's budgeted fees, including a proposal by counsel in the patent litigation that Ubee maintains was a "fixed fee;" (2) documents related to Charter's investigation of the claims, defenses, and litigation risk; and, (3) documents regarding the indemnity obligations of other Charter vendors.

Charter responds that the documents provided to Ubee are sufficient to assess the reasonableness of the fees and settlements because "the reasonableness of the fees Charter paid can be ascertained by the invoices describing the work performed, records of payment, and the legal file which contains pleadings, discovery responses, extensive briefing, expert reports, and a pretrial order."  ECF 58 at 8.

## Discussion

In this diversity action, the parties agree that Missouri law applies under the terms of the Master Purchase Agreement and, therefore, "governs privilege."  *See* Fed. R. Evid. 501.  Federal law, however, governs resolution of work product claims.  *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000); Fed.

R. Civ. P. 26(b)(3).  Under Missouri law a waiver of the attorney-client privilege may be found if the subject matter of the privileged communication is put "at issue" by the claims brought in the lawsuit.  *See Sappington v. Miller,* 821 S.W.2d 901, 904 (Mo. Ct. App. 1992); *City of Grandview v. Missouri Gas Energy*, 2012 WL 12897093, at *3 (W.D. Mo. Sept. 10, 2012).   "Thus, a waiver of the attorney-client and work-product privileges may be found where the client places the subject matter of the privileged communication at issue." *Id.* (citing *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002); *Sappington*, 821 S.W.2d at 904).  Under the "fairness doctrine," waiver occurs "when a party asserts a claim that in fairness requires examination of protected communications." *State v. Williams*, 427 S.W.3d 259, 267 (Mo. Ct. App. 2014).  The doctrine prevents a party from using privilege as both a "sword" and a "shield." *Id.*

After careful review of the respective parties' positions, the Court concludes that Charter has placed the reasonableness of its attorneys' fees and settlement in the underlying patent litigation at issue here by seeking contractual indemnification from Ubee, thereby waiving the attorney-client privilege under Missouri law for the categories of documents sought by Ubee in RFPs 15–18, 35-38, 43-44, 46–47, and 83–94.  "Application of the privilege under these circumstances would deny [Ubee] access to vital information peculiarly possessed by the attorneys necessary to defend against [Charter's] claims.  In such circumstances, [Charter] has waived

6

the protection of the attorney-client privilege." *Pamida,*, 281 F.3d at 731 (applying Nebraska law, court concluded that party seeking indemnification for costs, including attorneys' fees, incurred in the defense and settlement of patent infringement action waived attorney client privilege and work product protection) (alteration added).

Although *Pamida* applies Nebraska law with respect to the attorney-client privilege analysis, I find the Eighth Circuit's reasoning persuasive here where Missouri law is in accord that seeking attorneys' fees in a separate action for damages or indemnification places those fees at issue so as to constitute a waiver of the attorney-client privilege. *See City of Grandview*, 2012 WL 12897093, at *3. The Missouri cases relied on by Charter are distinguishable as they involved fee awards in cases in which the prevailing party was entitled to recover its fees for that case from the losing party. This case seeks attorneys' fees from separate litigation sought as damages in an action for contractual indemnification. *See Chipman v. Transp. Insur. Co.*, 4:11-cv117-DDN, 2013 WL 796083, at *5-*6, n.2 (E.D. Mo. Mar. 4, 2013) (no waiver where only fees sought related to instant, not prior, action); *see also State ex rel. Chase Resorts v. Campbell,* 913 S.W.2d 832, 837 (Mo. Ct. App. 1995) (where court ordered payment of fees to prevailing party in the litigation, court is expert on reasonableness of those fees and may award fees

7

as a matter of law, so no waiver of attorney client privilege and attorney not obligated to turn over entire contents of legal file).

In contrast, whether Ubee was bound to defend/indemnify Charter for fees and/or amounts paid in settlement under the Master Purchase Agreement and the reasonableness of those amounts are facts that must be determined in this lawsuit. Charter's conduct in entering into the settlement agreement and in defending the underlying cases are relevant to those issues.

*Pamida* is also directly on point to the extent RFPs 15–18, 35-38, 43-44, 46–47, and 83–94 seek attorney work product:

> The work product privilege is not absolute and may be waived. *See United States v. Nobles,* 422 U.S. 225, 239, 95 S. Ct. 2160, 45 L.Ed.2d 141 (1975); *see also In re Chrysler Motors Corp. Overnight Evaluation,* 860 F.2d 844 (8th Cir. 1988). This court has recognized that the privilege should be "applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis." *Pittman v. Frazer,* 129 F.3d 983, 988 (8th Cir. 1997). The privilege is designed to balance the needs of the adversary system to promote an attorney's preparation in representing a client against society's interest in revealing all true and material facts relevant to the resolution of a dispute. *See Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L. Ed. 451 (1947). In the instant case, that balance weighs on the side of disclosure, and this Court holds that Pamida impliedly waived the work product privilege by bringing the indemnification action in which the information allegedly protected is crucial and unavailable by other means.
>
> With respect to the issue of implied waiver, the Court must not only look at whether Pamida intended to waive the privilege, but also whether the interests fairness and consistency mandate a finding of waiver. *See* Wigmore, *Evidence in Trial at Common Law,* § 2327 at 636. (J. McNaughton rev. 1961). "When a party seeks a greater advantage from its control over work product than the law must provide to maintain a healthy

8

> adversary system, the privilege should give way." *In re Sealed Case,* 676 F.2d 793, 818 (D.C. Cir.1982).
>
> Here, the privilege must give way. The information sought from Pamida's counsel involves the crucial issues in the indemnification action, i.e., the nature of the work the attorneys performed in the patent infringement action, what actions were taken by Pamida to notify Dynasty of the patent infringement action and of Pamida's claim for indemnification, and whether the $750,000 incurred in attorneys' fees was reasonable. Fairness requires that the work product privilege must give way to Dynasty's right to investigate the facts underlying Pamida's claim and to mount a defense against that claim. Absent implied waiver, Dynasty would be denied access to critical information, known only to the LHDL attorneys. When Pamida instituted this indemnification action seeking to recover in excess of $1.2 million, of which $750,000 constitutes attorneys' fees, it clearly placed the work of its attorneys squarely at issue and thereby waived the work product privilege.

281 F.3d at 732. The same analysis applies here and mandates a finding of waiver of the work product privilege in this case. Accordingly, the motion to compel is granted with respect to RFPs 15–18, 35-38, 43-44, 46–47, and 83–94.[4]

The motion to compel is denied as to RFP 19, 33-34, and 72 to the extent it seeks information regarding Charter's indemnification from other vendors beyond that which Charter has already produced, which includes the other vendors' agreements with Charter and documents that include the indemnification requests to the other vendors, Entropic's damages reports, documents showing the number

---

[4] Because of this ruling, I need not, and therefore do not, consider the issue of waiver with respect to the prior disclosure of 54-4 and the application of the common interest doctrine.

of accused devices for all vendors (including Ubee) that Entropic accused of infringement in, and the settlement amounts Charter seeks from the other vendors.

Accordingly,

**IT IS HEREBY ORDERED** that the motion to compel [50] is granted in part and denied in part as set forth above, and Charter shall produce all relevant documents and information within twenty (20) days of the date of this Memorandum and Order, unless otherwise agreed to by the parties and memorialized in a joint motion for extension of time filed with the Court prior to the production deadline.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 27th day of January, 2025.